DEFENDANT'S
EXHIBIT

A

# Release

For The Sole Consideration of ___TWELVE THOUSAND FIVE HUNDRED & 00/100___

_____ ($ _12,500.00_ )

Dollars, the receipt and sufficiency whereof is hereby acknowledged the undersigned hereby releases and forever discharges

_LUCIOUS LAMAR_

_____, and __ h _IS_ heirs,

executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the ___17___ day of ___JAN___, 19 _98_ at or near _CINCINNATI, OH_

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

Undersigned hereby accepts as final payment the total consideration as set forth above.

In Witness Whereof, have hereunto set _ANTHONY ELSASS & CAROLE ELSASS_ hand and seal this ___20___ day of _APRIL_, 19 _99_

In presence of _Carole J Elsass_ _____ (SEAL)
_____ (SEAL)
_____ (SEAL)

IN OHIO: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

IN INDIANA: A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

IN PENNSYLVANIA: (SENATE BILL 849) Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

IN KENTUCKY: Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

CLAIM NUMBER
_09 - 28680_

CL-93 (06-98)

EXHIBIT

A

Service: **Get by LEXSEE®**
Citation: **2002 ohio 909**

*2002 Ohio 909; 2002 Ohio App. LEXIS 687, ***

DAVID BATTEIGER, et al. Plaintiffs-Appellants v. ALLSTATE INSURANCE COMPANY, et al. Defendants-Appellees

C.A. CASE NO. 2001 CA 37

COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, MIAMI COUNTY

2002 Ohio 909; 2002 Ohio App. LEXIS 687

February 15, 2002, Rendered

**PRIOR HISTORY:**  [*1]  T.C. NO. 99-353.

**DISPOSITION:** Trial court's grant of defendant-appellee U.S.F. & G.'s motion for summary judgment was reversed and cause was remanded.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, mother, father, and brother, appealed the judgment of the Miami County Court of Common Pleas (Ohio) granting summary judgment in favor of defendant insurer in the mother's, father's, and brother's declaratory judgment action seeking underinsured motorist coverage.

**OVERVIEW:** A drunk driver struck the decedent's car and killed her. The drunk driver's insurance company paid the maximum liability coverage under the drunk driver's policy. The decedent was driving her father's car when she was struck. The decedent was living with the mother at the time of the accident. The father, mother, and brother sought to recover under the insurer's policy, which had been issued to the mother's employer. The issue was whether the insurer excluded the decedent from its underinsured motorist coverage, where the decedent was driving a car that was not covered by the insurer. The appellate court found that the decedent was covered by the underinsured motorist section of the insurer's policy. Where the policy stated that an insured party included "you," it referred to employees and family of employees. Thus, the decedent, as the insured party's daughter, was covered. With regard to whether the decedent was covered while driving her father's car, which was not covered under the policy, the policy did not explicitly exclude coverage in such a situation.

**OUTCOME:** The judgment was reversed and remanded.

**CORE TERMS:** insured, occupying, covered auto, coverage, family member, uninsured motorist coverage, vehicle owned, insurer, struck, exclude coverage, named insured, motor vehicle, ambiguous, insurance contract, insurance policy, bodily injury, meaningless, declarations, policy language, interpreting, scenario, driving, underinsured motorist coverage, automobile insurance policy, underinsured motorist, entitled to recover, uninsured motorist, factual situation, summary judgment assignment of error

### LexisNexis (TM) HEADNOTES - Core Concepts - ♦ Hide Concepts

Insurance Law > Motor Vehicle Insurance > Exclusions Generally 🔍
*HN1* ⬇ See Ohio Rev. Code Ann. § 3937.18(J).



EXHIBIT

B

Insurance Law > Motor Vehicle Insurance > Coverage Generally 🗎
Insurance Law > Motor Vehicle Insurance > Exclusions Generally 🗎
*HN2* ✚ In the context of <u>Ohio Rev. Code Ann. § 3937.18(J)</u>, an insurer could draft policy language that provides varying arrays of coverage to any number of individuals.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules 🗎
*HN3* ✚ Where insurance policy language is reasonably susceptible of more than one interpretation, it has to be construed strictly against the insurer and liberally in favor of the insured.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage 🗎
*HN4* ✚ Uninsured motorist coverage is designed to protect persons, not vehicles.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Exclusions Generally 🗎
*HN5* ✚ An insurer is permitted to draft its insurance policy to exclude coverage in a situation where the injured party was driving a person's car that was not covered under the insurer's policy. However, it is required to do so with language that is clear and unambiguous and that comports with the requirements of the law.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules 🗎
Insurance Law > Motor Vehicle Insurance > Exclusions Generally 🗎
*HN6* ✚ In construing insurance contracts, where exceptions, qualifications, or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules 🗎
*HN7* ✚ Policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms 🗎
*HN8* ✚ Where an insurance policy is ambiguous and reasonably open to different interpretations, a court must construe the policy liberally in favor of the insured and strictly against the insurer.  More Like This Headnote

**COUNSEL:** DAVID M. DEUTSCH, Dayton, Ohio, Attorney for Plaintiffs-Appellants.

JOSEPH W. GELWICKS, and LYNNE M. LONGTIN, Cincinnati, Ohio, Attorneys for Defendants-Appellees.

**JUDGES:** WOLFF, P. J. BROGAN, J., and FAIN, J., concur.

**OPINIONBY:** WOLFF

**OPINION:**

WOLFF, P. J.

David, Mary Jo, and Peter Batteiger (hereinafter collectively referred to as "the Batteigers") appeal from a judgment of the Miami County Court of Common Pleas, which granted summary judgment in favor of United States Fidelity and Guaranty Company ("U.S.F. & G.").

On April 3, 1999, Carlos Corrello drove through a stop sign while intoxicated and collided with a vehicle driven by seventeen-year-old Sarah Ann Batteiger. The vehicle was owned by Sarah Ann's father, David Batteiger. Sarah Ann died as a result of injuries that she sustained in the collision. Her father is the administrator of her estate. Corrello's insurance company paid $ 25,000, which was the maximum liability coverage under Corrello's policy, to Sarah Ann's estate.

David and Mary Jo Batteiger are divorced. Sarah Ann and her brother Peter lived primarily with their mother, Mary Jo. Mary Jo is employed by Grandview Hospital, which has an automobile **[*2]** insurance policy with U.S.F. & G. The policy was issued to Grandview on December 31, 1998.

On September 17, 1999, the Batteigers filed a declaratory judgment action against two insurance companies, which are not parties to this appeal. They amended their complaint on December 1, 2000, adding U.S.F. & G. as a defendant. A second amended complaint was filed on June 13, 2001. U.S.F. & G. filed a motion for summary judgment, and the trial court granted the motion on August 31, 2001.

The Batteigers raise one assignment of error on appeal:

THE TRIAL COURT ERRED IN GRANTING U.S.F. & G.'S MOTION FOR SUMMARY JUDGEMENT [SIC] AS IT FAILED TO INTERPRET ALL OF THE AMBIGUITIES IN THE INSURANCE CONTRACT AT ISSUE LIBERALLY IN FAVOR OF THE INSURED AND STRICTLY AGAINST THE INSURER AS REQUIRED BY LAW.

The issue presented for our review is whether the language of Grandview's insurance policy with U.S.F. & G. excludes underinsured motorist coverage in this factual situation.

Initially, the parties agree that U.S.F. & G. could exclude coverage in this situation under R.C. 3937.18(J), which provides:

_HN1_ The coverages offered under division (A) of this section or selected **[*3]** in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:

(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the insured and underinsured motorist coverages are provided.

Therefore, we must decide whether U.S.F. & G.'s policy with Grandview did in fact exclude coverage.

Our decision is governed primarily by _Scott-Pontzer v. Liberty Mut. Fire Ins. Co._ (1999), 85 Ohio St. 3d 660, 710 N.E.2d 1116. U.S.F. & G. argues that _Scott-Pontzer_ is not the applicable law because the applicable policy in that case was issued prior to House Bill 261, which amended R.C. 3937.18 to add section (J), quoted above. House Bill 261 went into effect in 1997, and the policy at issue **[*4]** in _Scott-Pontzer_ was issued sometime prior to 1994. Therefore, _Scott-Pontzer_ was not interpreting House Bill 261. However, the supreme court in _Scott-Pontzer_ specifically noted that _HN2_ an insurer could "draft policy language that provides varying arrays of coverage to any number of individuals." _Id._ at 664. Thus, the issue

in that case, as in this one, was not whether the insurer could restrict coverage, but whether it had. The addition of section (J) to R.C. 3937.18 does not change this analysis. Therefore, we will apply *Scott-Pontzer* in deciding this case.

As in *Scott-Pontzer*, the declarations page of the U.S.F. & G. policy states that "throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." The named insured is Grandview Hopsital. The policy's uninsured motorist coverage form also contains language identical to that in *Scott-Pontzer*:

B. Who Is An Insured?

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, **[*5]** repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

In interpreting this language, the supreme court concluded that it was *HN3*⊕"reasonably susceptible of more than one interpretation" and therefore had to be "construed strictly against the insurer and liberally in favor of the insured." *Scott-Pontzer*, 85 Ohio St. 3d at 664. The court noted that *HN4*⊕uninsured motorist coverage "was designed * * * to protect persons, not vehicles" and concluded that:

It would be reasonable to conclude that "you," while referring to [the corporation], also includes [the corporation's] employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons-including the corporation's employees.

*Id.*

As the policy language at issue in the case *sub judice* is identical **[*6]** to that in *Scott-Pontzer*, we must interpret "you" in the U.S.F. & G. policy to include employees and therefore to include Mary Jo. Because the definition of an "insured" includes Mary Jo, it includes Sarah Ann as her family member under the definition above. See, also, *Ezawa v. Yasuda Fire & Marine Ins. Co.* of Am. (1999), 86 Ohio St. 3d 557, 715 N.E.2d 1142 (holding that minor son of insured's employee was entitled to underinsured motorists coverage under insured's commercial automobile insurance policy pursuant to the reasoning in *Scott-Pontzer*). Therefore, we find that Sarah Ann was an insured under the policy. We must now turn to an analysis of whether the insurance contract excluded coverage in this situation, where Sarah Ann was driving her father's car, which was not a covered auto.

We recognize that, under *Scott-Pontzer* and R.C. 3937.18(J), U.S.F. & G. *HN5*⊕was permitted to draft its insurance policy to exclude coverage in this situation. *Scott-Pontzer*, 85 Ohio St. 3d at 664. However, it was required to do so "with language that is clear and unambiguous and that comports with the requirements of the law." **[*7]** *Id.*

We find that the policy is ambiguous for several reasons. First, the declarations page of the policy states that "each of these coverages will apply only to those 'autos' shown as covered

'autos'" and lists uninsured and underinsured motorist coverage; however, the uninsured motorist coverage portion of the policy does not state that the insured must be in a covered auto. Second, the definition of "who is an insured" under the policy includes "you," "if you are an individual, any family member," and "anyone else occupying a covered auto." The third paragraph of this definition specifically states that the "anyone else" must be occupying a covered auto. However, the first two paragraphs, including the insured and family members, does not specifically state that the insured must be occupying a covered auto. This creates ambiguity as to whether the insured and family members must be occupying a covered auto. Finally, the uninsured motorist coverage form includes an exclusion section that would be meaningless if we were to read that portion of the policy to apply only to covered autos.

The "Exclusions" section of the uninsured motorist coverage form excludes:

5. "Bodily injury" [*8] sustained by:

a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

HN6⟳In construing insurance contracts, "where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof." 85 Ohio St. 3d at 665-66, citing _King v. Nationwide Ins. Co._ (1988), 35 Ohio St. 3d 208, 214, 519 N.E.2d 1380. The factual scenario in this case does not fall under any of the above exclusions. Sarah Ann was not occupying a vehicle owned by either herself or her mother. She was occupying a vehicle owned by her father. While the policy [*9] could easily have been written to exclude this situation, it was not. U.S.F. & G. chose to exclude the three situations above, and we must presume that this is a complete list of exclusions. While U.S.F. & G. may argue that it should be obvious that coverage does not extend to this factual scenario, it wrote the policy in such a way as to make coverage ambiguous. The exclusions could have said "any family member while occupying or struck by any vehicle that is not a covered auto." For that matter, the policy could simply have stated that coverage was excluded for "any _insured_ while occupying or struck by any vehicle that is not a covered auto." However, section (b), which is the closest fit to the situation we have here, specifically refers to any "family member while occupying or struck by any vehicle _owned by that family member_ that is not a covered auto."

As the supreme court stated in _Scott-Pontzer,_ HN7⟳"policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured." _Id._ 85 Ohio St. 3d at 665. Accordingly, we conclude that Sarah Ann was an insured under the U.S.F. & [*10] G. policy, that she was covered by the underinsured motorist section of the policy, and that the policy did not exclude coverage for this factual situation.

We understand U.S.F. & G.'s argument that, because Sarah Ann was not driving a covered auto, she was not covered by the policy. However, the policy is ambiguous in its uninsured motorist coverage. If we were to read the uninsured motorist portion of the policy to require the insured to be operating a covered auto, the exclusions cited above would be rendered meaningless. There would be no reason to exclude three specific situations involving a non-covered auto if all situations involving non-covered autos were excluded. Furthermore, the "who is an insured" section of the uninsured motorist portion of the policy suggests that the

insured and family members do not have to be occupying a covered auto. At the very least, we find that the policy is ambiguous and reasonably open to different interpretations. Therefore, *HNS* we must construe the policy "liberally in favor of the insured and strictly against the insurer." *Id.* Therefore, we hold that Sarah Ann's estate is entitled to recover under the uninsured motorist coverage provisions **[*11]** of Grandview's insurance policy with U.S.F. & G.

The Batteigers' assignment of error is sustained.

The judgment of the trial court will be reversed and the matter remanded for the court to enter judgment consistent with this opinion.

BROGAN, J. and FAIN, J., concur.

Service: **Get by LEXSEE®**
Citation: **2002 ohio 909**
View: Full
Date/Time: Monday, November 3, 2003 - 9:14 AM EST

\* Signal Legend:

● - Warning: Negative treatment is indicated

⚠ - Caution: Possible negative treatment

◆ - Positive treatment is indicated

Ⓐ - Citing Refs. With Analysis Available

ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

COPY

DIANA ZALESKI

2003 JUL -3 PM 3: 04

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

MARGARET A. FLOWERS, )  CASE NO. CV 2002 09 5113
 )
    Plaintiff, )  JUDGE BURNHAM UNRUH
 )
vs. )
 )
FRANK E. McNAIR, *et al.*, )  **ORDER**
 )
    Defendants. )
 )

   This matter comes before the Court on the Motions for Summary Judgment separately

filed by Defendant Nationwide Insurance Company ("Nationwide"); Transcontinental Insurance

Company ("Transcontinental"); and Plaintiff Margaret A. Flowers ("Plaintiff").[1]  The Court has

considered the aforementioned Motions, the facts of this case, Civ.R. 56(C), and applicable law.

Upon due consideration and for good cause shown, the Court hereby:

   (1)  GRANTS Transcontinental's Motion for Summary Judgment;

   (2)  DENIES Nationwide's Motion for Summary Judgment as it is moot; and

   (3)  DENIES the Plaintiff's Motion for Summary Judgment.

---

[1]  The Court notes that even though the Plaintiff's claims against Nationwide have been settled and dismissed,
Nationwide's Cross-Claim against Transcontinental remains pending.  Specifically, as it pertains to Nationwide and
Transcontinental, the Court must determine whether Transcontinental's UM/UIM coverage to Plaintiff, if any, is pro
rata with the UM/UIM coverage under the Nationwide policy.

**EXHIBIT**

C

COPY

## STATEMENT OF CASE AND LAW

On September 25, 2000, the Plaintiff was injured in a motor vehicle accident allegedly caused by the negligence of Defendant Frank E. McNair. At the time of the accident, the Plaintiff was insured by Nationwide under a policy of automobile liability insurance that included provisions for UM/UIM coverage. The Plaintiff's claims against Nationwide were settled and dismissed on April 14, 2003. Nationwide's Cross-Claims against Defendant Transcontinental remain pending. Nationwide voluntarily dismissed its Cross-Claims against Defendant McNair on March 17, 2003.

At the time of the September 25, 2000 motor vehicle accident, the Plaintiff was employed by Hope Homes, Inc. ("Hope Homes"). It is undisputed that, at the time of the accident, the Plaintiff was on her own time and was not within the course and scope of her employment for Hope Homes. It is further undisputed that the Plaintiff was operating her own motor vehicle at the time of the accident.

At all pertinent times, Hope Homes was insured by Transcontinental. Pursuant to *Scott-Pontzer v. Liberty Mutual Fire Ins. Co.* (1999), 85 Ohio St.3d 660 and its progeny, the Plaintiff alleges that the automobile liability coverage issued to the alleged tortfeasor, Defendant McNair, is inadequate and that she is entitled to uninsured motorist benefits under the Transcontinental policy of insurance issued to Hope Homes.[2]

As previously stated, currently before the Court are Motions for Summary Judgment filed by Nationwide, Transcontinental, and the Plaintiff. In reviewing a motion for summary judgment, the Court must consider the following: (1) whether there is no genuine issue of

---

[2] The Court notes that at the time of the accident, Defendant McNair had automobile liability insurance through Reliance Insurance Company. Reliance has been determined to be insolvent and has been ordered into liquidation by the Commonwealth of Pennsylvania. The Ohio Insurance Guaranty Association ("OIGA") has taken over the handling of this claim and has taken the position that all UM/UIM coverage must be exhausted before it has any responsibility to pay.

COPY

material fact to be litigated; (2) whether in viewing the evidence in a light most favorable to the non-moving party it appears that reasonable minds could come to but one conclusion; and (3) whether the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280; *Wing v. Anchor Media, L.T.D.* (1991), 59 Ohio St.3d 108. If the Court finds that the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it has the burden of proof, summary judgment is appropriate. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317; *Schremp v. Haugh's Products* (Nov. 19, 1997), Lorain App. No. CA 006655, unreported.

Rule 56(C) of the Ohio Rules of Civil Procedure states the following, in part, in regards to summary judgment motions:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of the evidence in the pending case, and written stipulations of fact, if any timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

For the sake of clarity, the Court will separately address below the parties' Motions for Summary Judgment.

**(1)        Defendant Transcontinental's Motion for Summary Judgment.**

At the time of the September 25, 2000 motor vehicle accident, Hope Hopes was insured by Transcontinental. *See*, March 17, 2003 Stipulations at ¶ 4. Specifically, at the time of the accident Transcontinental issued a commercial package policy, Policy No. SO 0579838, to Hope Homes with a policy period of February 24, 2000 to February 24, 2001. *Id.* This policy provided Business Automobile Liability ("Business Auto") coverage and Commercial General Liability ("CGL") coverage.

COPY

Transcontinental asserts in its Motion for Summary Judgment that the Plaintiff is not entitled to UM/UIM benefits under either the Business Auto or CGL portions of its policy issued to Hope Homes. Transcontinental argues that its CGL coverage part does not constitute a "motor vehicle liability" policy subject to R.C. 3937.18 and, thus, is not subject to R.C. 3937.18 mandates. It is additionally asserted that the Plaintiff fails to satisfy the threshold requirement of being an "insured" under the CGL coverage part. Transcontinental further asserts that the Plaintiff is not entitled to coverage under the policy's Business Auto coverage part because she was not operating a "covered auto" at the time of the accident. Transcontinental alternatively asserts that, if coverage is found to exist, its coverage is excess to any coverage provided by Nationwide.

The Court will separately address the issues of whether the Plaintiff is entitled to UM/UIM benefits under the Business Auto coverage part and/or CGL coverage part of the Transcontinental policy issued to Hope Homes, *i.e.* Policy No. SO 0579838.

a.   **Whether the Plaintiff is entitled to UM/UIM benefits under the Business Auto coverage part of the Transcontinental policy issued to Hope Homes.**

It is undisputed that the Business Auto coverage part of the Transcontinental policy issued to Hope Homes provides UM/UIM coverage. The Business Auto coverage part provides liability and UM/UIM coverage in the amount of $1,000,000.00. UM/UIM coverage is provided under the Policy only for autos designated by the symbol "2", *i.e.,* "Owned 'Autos' Only". *See,* business Auto Coverage Declarations, page 1. "Owned 'Autos' Only" is defined as:

> Only those 'autos' you own (and for Liability Coverage any 'trailers' you don't own while attached to power units you own). This includes those 'autos' you acquire ownership of after the policy begins.

4

*See*, Exhibit B to March 17, 2003 Stipulations, CA 00 01 07 97 at page 1 of 10.  Item Three of the Declarations, titled "Schedule of Covered Autos You Own", specifically identifies, by make, model and year, those vehicles that constitute "covered autos" under the Policy.  The vehicle that the Plaintiff was driving at the time of the September 25, 2000 motor vehicle accident is not listed under the "Schedule of Covered Autos You Own" or any endorsements thereto.

Transcontinental argues that, even if the Plaintiff constitutes an "insured", she has no entitlement to UM/UIM coverage under the Business Auto coverage part of its policy because the Plaintiff was not operating a covered auto at the time of the motor vehicle accident.  The Court agrees.  The Business Auto coverage part of the Transcontinental policy clearly and unambiguously provides UM/UIM coverage for those autos set forth in the Schedule of Covered Autos.  Because the Plaintiff was not driving a covered auto at the time of the accident, even if she is an insured, the Court finds that her claims as to Transcontinental are barred because she was not operating a covered automobile as required under the Policy.  *See,* this Court's analysis in *Dillen v. Spurlock* (Jan. 29, 2003), Summit County Court of Common Pleas Case No. CV 2002 01 0494 at 7 (holding that the plaintiff had no entitlement to UM/UIM coverage because the vehicle that she was driving at the time of the motor vehicle accident was not listed as a "covered auto" under the policy); *The Cincinnati Ins. Co. v. Grant* (Oct. 7, 2002), Summit County Court of Common Pleas Case No. CV 2001 06 3012, at 10 (this Court held that the defendant was not entitled to UM/UIM coverage because he was not operating a "covered auto" at the time of the motor vehicle accident); *citing, Lewis v. Powell* (Jan. 29, 2002), Franklin County Court of Common Pleas Case No. 01 COH-02-1878, unreported at 5 (holding that, because the plaintiff was not driving or occupying one of the specifically listed 52 automobiles under the insurance policy, she was not entitled to UM/UIM coverage); *Daugherty v. Hamilton*

COPY

(Jan. 23, 2002), Ottawa County Court of Common Pleas Case No. 2000-CV-5269, unreported at 6 (applying definition of covered auto to hold that the plaintiff was not covered by the policy as he was not riding in a covered auto); *Kekic v. Royal and Sun Alliance Ins. Co.* (Sept. 20, 2001), Cuyahoga County Court of Common Pleas Case No. 425478, unreported at 2-3 (finding that the policy could limit UM/UIM coverage to covered autos and holding that the plaintiff was not entitled to such coverage because there was no evidence that the plaintiff was operating a covered auto at the time of the accident); *Reedy v. Warner* (Nov. 14, 2001), Montgomery County Court of Common Pleas Case No. 2000-CV-5269, unreported at 2-3 (holding that an insurance policy which covers a corporation and specifically identified automobiles is not ambiguous and does not cover all of the named corporate insureds' employees); *Edmunson v. Reed* (June 20, 2001), Stark County Court of Common Pleas Case No. 2000 CV 02457, unreported at 5 (holding that an insurer may limit insureds to those employees "while using a 'covered auto' you don't own, hire, or borrow in your business personal affairs"); *Tatman v. State Farm Ins. Co.* (Oct. 30, 2000), Franklin County Court of Common Pleas Case No. 00CV02-08, unreported at 3 (holding that definition of insured limited employees in a covered auto was a "valid, unambiguous limitation on coverage that must be enforced by the Court" and denied coverage); *Fidelity and Guaranty Underwriters, Inc. v. Nocero* (Dec. 13, 2001), U.S.D.C. N.D. Ohio No. 1:01 CV 397 (holding that an auto owned by the employee of a corporate named insured is not a covered auto for purposes of UM/UIM coverage where the policy states that such coverage is only available for automobiles owned by the named insured).

In addressing this identical issue, the Third District Court of Appeals in *Wright v. Small* (March 4, 2003), Seneca App. No. 13-02-34, 2003-Ohio-971, stated:

> Although a corporation 'cannot occupy a motor vehicle [or] suffer bodily injury or death' which is the genesis of the ambiguity found in the language of

COPY



the insurance policy at issue in *Scott-Pontzer*, a corporation clearly can hold lawful title to motor vehicles and can acquire insurance restricted to those vehicles which it itself owns.

Similarly, in *Estate of Houser v. Motorists Ins. Co.* (June 4, 2002), Auglaize County App. No. 2-02-02, 2002-Ohio-2845, the court addressed the issue of whether an employee was entitled to UM/UIM benefits under his employer's insurance policy if he was not occupying a covered auto at the time of the accident. The policy in *Estate of Houser* only extended coverage to Symbol 2 autos ("Owned autos only"), Symbol 8 autos ("Hired Autos"), and Symbol 9 autos ("Non-Owned Autos used in connection with business"). The court held that based on these designations, the policy limited coverage to those autos owned by the corporation. Because the plaintiff's decedent was not occupying an automobile owned by the corporate insured at the time of the accident, the court in *Estate of Houser* held that he had no entitlement to UM benefits.

There is no ambiguity with regard to whether a corporate entity can own automobiles. There is no dispute that Hope Homes is capable of owning automobiles. In fact, Hope Homes owned at least thirty-four (34) vehicles that are specifically identified in the Business Auto coverage part of the Transcontinental policy. The Court finds that because the Plaintiff was not in an automobile owned by Hope Homes as required in the Policy, and hence not operating a Symbol 2 auto at the time of the accident, she has no entitlement to UM/UIM coverage under the Transcontinental Business Auto coverage part of its policy issued to Hope Homes.

The Court further finds that the Plaintiff has no entitlement to UM/UIM coverage under the Transcontinental Business Auto coverage part of its policy because of the valid exclusions contained therein. The Transcontinental policy contains an "other owned vehicle" exclusion that eliminates UM/UIM coverage for individuals while operating their own vehicles that are not "insured vehicles" listed in the Policy. R.C. 3937.18(J)(1), as amended per H.B. 261,

COPY

specifically authorizes "other owned" vehicle exclusions, which have the effect of eliminating UM/UIM coverage for the Plaintiff. R.C. 3937.18(J)(1) states:

> (J)    The coverage offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
>
> > (1)    While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided;
>
> > > * * *

The Ninth District Court of Appeals, in *Mazza v. American Continental Ins. Co.* (Jan. 29, 2003), Summit App. No. 21192, addressed the enforceability of this other owned vehicle exclusion. The Ninth District Court of Appeals in *Mazza* specifically reviewed the grant of summary judgment for Westfield based on an identical other owned vehicle exclusion. In *Mazza*, the appellant sought UM/UIM benefits from American Manufacturers Mutual Insurance Company ("AMM") based on a commercial policy of insurance issued to her employer, Cuyahoga Falls General Hospital ("CFGH"). At the time of the accident, the appellant was not driving a car owned or leased by CFGH, nor was she acting in the course and scope of her employment with CFGH at the time of the accident. Like Transcontinental, AMM argued that the appellants' claims were barred because she was driving a non-covered auto when the accident occurred. AMM relied on the following "other owned vehicle" exclusion:

> This insurance does not apply to:
>
> 5.    Bodily injury sustained by:

8

COPY

a.  You while occupying or when struck by any vehicle owned by you that is not a covered auto for uninsured motorist coverage under this coverage form.

The Business Auto coverage part of the Transcontinental policy issued to Hope Homes contains this exact same exclusion.

The Ninth District Court of Appeals in *Mazza* held that according to the above-cited exclusion, the insured is excluded from coverage while driving a non-covered vehicle – *i.e.*, a vehicle that is not specifically identified in the declarations.  Because the *Mazza*-appellant was not occupying one of the five covered autos in the policy, the Court found that her claims were precluded.  The Ninth District agreed with the rationale from the Third District Court of Appeals in *Niese v. Maag* (Dec. 13, 2002), Third App. No. 12-02-06, wherein the court held that "you" must be read consistently and there can be no differentiating between named insured and employees of the "named insured" for purposes of the other owned vehicle exclusion.

As previously stated, the Business Auto coverage part of the Transcontinental policy contains a "schedule of covered autos you own" which lists thirty-four specific automobiles identified by make and model.  Because the Plaintiff was not occupying one of the covered autos in the Transcontinental policy, even if an insured thereunder, she has no entitlement to UM/UIM.

Wherefore, as it pertains to the Business Auto coverage part of its policy issued to Hope Homes, the Court GRANTS Transcontinental's Motion for Summary Judgment.

b.  **Whether the Plaintiff is entitled to UM/UIM benefits under the CGL coverage part of the Transcontinental policy issued to Hope Homes.**

With regard to the CGL coverage part of its policy, Transcontinental asserts that this coverage part is not subject to R.C. 3937.18 because it does not constitute a "motor vehicle liability policy" under R.C. 3937.18.  It is stated that the CGL policy specifically excludes

9

automobile liability coverage and does not even provide coverage to non-owned and hired autos. Neither Nationwide nor the Plaintiff address this argument, as it pertains to the CGL coverage part of the Transcontinental policy, in their briefs.

RC. 3937.18, as amended by HB 261, governs the Transcontinental policy in this instance. R.C. 3937.18(A) required an offer of UM/UIM coverage only in connection with an "automobile liability or motor vehicle liability policy" of insurance. "Automobile liability or motor vehicle liability policy" is defined in R.C. 3937.18 as follows:

> (L)     As used in this section, 'automobile liability or motor vehicle liability policy of insurance' means either of the following:
>
> (1)     any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators **of the motor vehicles specifically identified in the policy of insurance**;
>
> (2)     any umbrella liability policy of insurance.

[*Emphasis added.*] R.C. 3937.18(L), amend. HB 261 (eff. 9/3/97).

The Transcontinental CGL Policy does not specifically identify any motor vehicles. The Policy is a property damage and general liability policy covering Hope Homes and its premises. Because the CGL Policy does not specifically identify any motor vehicles, and pursuant to the Ninth District Court of Appeals' decision in *Gilcreast-Hill v. Ohio Farmers Ins. Co.* (Sept. 4, 2002), Ninth District Court of Appeals C.A. No. 20983, unreported, Transcontinental asserts that it was not required to offer UM/UIM coverage and, therefore, is entitled to judgment as a matter of law. The Court agrees.

In *Gilcreast-Hill*, the plaintiff-appellant was involved in a motor vehicle accident while operating her own vehicle on her own time. Hence, the plaintiff-appellant was on personal business at the time of the accident and was not acting within the scope and course of her

COPY

employment. At the time of the accident, the plaintiff-appellant was employed by WHLS of Ohio, Inc. ("WHLS"). WHLS was insured under a CGL insurance policy, with a general aggregate limit of $2,000,000.00, issued by defendant-appellee Ohio Farmers Insurance Company ("Ohio Farmers"). Pursuant to *Scott-Pontzer v. Liberty Mutual Fire Ins. Co., supra,* 85 Ohio St.3d 660 and its progeny, the plaintiff-appellant sought UM/UIM coverage under the Ohio Farmers' policy issued to WHLS.

The plaintiff-appellant in *Gilcreast-Hill* brought a declaratory judgment action in the Summit County Court of Common Pleas seeking UM/UIM benefits. The plaintiff-appellant sought a declaration that WHLS's policy with Ohio Farmers constituted an "automobile liability insurance policy" subject to R.C. 3937.18 mandates. The plaintiff-appellant argued that because there was no offer of UM/UIM coverage, UM/UIM coverage was to be imposed by operation of law in an amount equal to the liability coverage of the policy.

In granting Ohio Farmers' motion for summary judgment, the trial court in *Gilcreast-Hill,* held:

> In the case at bar, the policy does not identify a single individual automobile for which UM/UIM is applicable for employees or automobiles outside of the scope of employment. As argued by Ohio Farmers, R.C. 3937.18 provides that for an insurer to be required to offer UM/UIM on [a] specific policy, the policy must serve as proof of financial responsibility with respect to motor vehicles identified in the policy of insurance. The policy at issue did not serve as proof of financial responsibility for the plaintiff and therefore no requirement to offer UM/UIM arises under the policy. The insurance policy would not provide proof of financial responsibility for the plaintiff had she been at fault in the accident.

In rendering the aforementioned decision, the court in *Gilcreast-Hill* relied in part upon *Jump v. Nationwide Mutual Ins. Co.* (Nov. 2, 2001), Second App. C.A. Case No. 18880, unreported. In *Jump,* the trial court granted the claimant's motion for summary judgment and the court of appeals subsequently reversed that decision and found in the insurer's favor as a

11

COPY

matter of law. The appellate court in *Jump* noted that the trial court did not address the HB 261 amendments to R.C. 3937.18, including the definition of "motor vehicle liability policy" in R.C. 3937.18(L)(1). The appellate court noted that the HB 261 amendments "significantly narrow[ed] the scope of policies that must include uninsured and underinsured motorist coverage when compared with the Supreme Court's interpretation of the previous version of the statute." *Id.* at *6-7. Under HB 261, only policies that specifically identify vehicles are subject to R.C. 3937.18. Policies that merely offer general categories of vehicle coverage – such as "non-owned" and "hired automobile" coverage – do not "specifically identify" vehicles within the meaning of R.C. 3937.18(L). The *Jump* court explained as follows:

> R.C. 3937.18(L), however, further limits the definition of an automobile liability or motor vehicle liability policy of insurance by providing that the proof of financial responsibility provided by the policy must be for owners or operators of the motor vehicle **specifically identified in the policy.** The Nationwide automobile policy did not specifically identify any motor vehicles. Rather, it provided coverage only for 'hired' and 'non-owned' automobiles. Jump claims that there is no distinction between hired and non-owned automobiles and those specifically described on the declarations page of a policy. We disagree.
>
> *  *  *
>
> The general categories of hired and non-owned vehicles do not qualify as 'specifically identified' vehicles using the plain and ordinary meaning of those terms. *  *  *
>
> Because Electro-Line's automobile policy with Nationwide did not specifically identify any motor vehicles, it did not satisfy the R.C. 3937.18(L) definition of an automobile liability or motor vehicle liability policy of insurance. Thus, Nationwide was not required to offer uninsured or underinsured motorist coverage as part of the policy. Accordingly, the trial court erred in concluding that such coverage arose by operation of law due to Nationwide's failure to offer such coverage when the policy was delivered.

[*Emphasis added.*] *Id.* at *7-8.

COPY

The Ninth District Court of Appeals, in *Gilcreast-Hill v. Ohio Farmers Ins. Co., supra,*

Ninth District C.A. No. 20983, followed the *Jump* reasoning.   The Ninth District Court of

Appeals provided in *Gilcreast-Hill* as follows:

> Pursuant to R.C. 3937.18 [as amended by HB 261, effective September 3, 1997], Ohio Farmers was required to offer UM/UIM coverage only if the policy in question was an automobile or motor vehicle liability policy.  The version of R.C. 3937.18 applicable to this claim defined an 'automobile liability or motor vehicle liability policy of insurance' as:
>
>> 'Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance[.]'     R.C. 3937.18(L)(1).  [*Footnote omitted.*]'
>
> Proof of financial responsibility, as defined in R.C. 4509.01, means 'proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle[.]'  R.C. 4509.01(K).
>
> Thus, to be considered an automobile liability or motor vehicle liability insurance policy, the policy must serve as proof of financial responsibility for owners or operators of *the motor vehicles specifically identified in the policy.* See *Uzhca v. Derham* (Apr. 5, 2002), 2d Dist. No. 19106; *Devore v. Richmond*, 6th Dist. No. WD-01-044, 2002 Ohio 3965, at ¶47 * * * .
>
> * * *
>
> We find *Uzhca* and *Devore* to be persuasive.  The phrase 'not owned by or rented or loaned to you or the insured' does not 'specifically identify' autos pursuant to the definition of automobile or motor vehicle liability.  **The policy cannot serve as proof of financial responsibility for 'owners or operators of *the motor vehicles specifically identified* in the policy,' if the policy does not specifically identify any motor vehicles.** * * * .
>
> As the policy is not an automobile or motor vehicle liability policy, Ohio Farmers was not required to offer UM/UIM coverage.  Consequently, the trial court did not err in granting summary judgment to Ohio Farmers. * * *

13

*Id.* at 6-11; *see also,* this Court's analysis in *Tharp v. Berdanier* (Feb. 12, 2003), Summit County Court of Common Pleas Case No. CV 2001 08 3612 (this Court held that a CGL policy did not constitute an automobile or motor vehicle liability policy and that, therefore, Erie was not required to offer UM/UIM coverage.)

As in *Gilcreast-Hill*, the Plaintiff in this case is claiming coverage under a CGL policy that fails to identify any specific vehicles. In accordance with the Ninth District Court of Appeals' decision in *Gilcreast-Hill v. Ohio Farmers Ins. Co., supra,* Ninth App. C.A. No. 20983, the Court finds that because no vehicles are specifically identified in the CGL coverage part of the Transcontinental policy, said Policy does not constitute an "automobile liability or motor vehicle liability policy" and, therefore, is not subject to R.C. 3937.18 mandates. Because the Policy is not an automobile or motor vehicle liability policy, Transcontinental was not required to offer UM/UIM coverage. WHEREFORE, the Court GRANTS Transcontinental's Motion for Summary Judgment as it pertains to the CGL coverage part of its policy issued to Hope Homes.

WHEREFORE, based upon the foregoing, the Court GRANTS Defendant Transcontinental Insurance Company's Motion for Summary Judgment. In light of this decision, there is no need for the Court to address the issue of *pro rata* contribution as it pertains to the Transcontinental and Nationwide policies.

(2)    **Defendant Nationwide's Motion for Summary Judgment.**

Nationwide asserts in its Motion for Summary Judgment that at the time of the September 25, 2000 motor vehicle accident, the Plaintiff was an "insured" under the Transcontinental policy. It is further asserted that UM/UIM coverage provided under the Transcontinental policy is *pro rata* with the UM/UIM coverage provided under the Nationwide policy.

COPY

As set forth above, the Court finds that even if the Plaintiff constitutes an insured under the Transcontinental policy issued to Hope Homes, she has no entitlement to UM/UIM coverage under either the Business Auto or CGL coverage parts of the Transcontinental policy.  As it pertains to the Business Auto coverage part, the Court specifically finds that the Plaintiff has no entitlement to UM/UIM coverage because she was not operating a covered automobile as required under the Policy.  The Court further finds that, with regard to the Business Auto coverage part, the Plaintiff has no entitlement to UM/UIM coverage thereunder due to the valid "other owned vehicle" exclusion. The "other owned vehicle" exclusion, discussed above, clearly and unambiguously eliminates UM/UIM coverage for individuals while operating their own vehicles that are not "insured vehicles" listed in the Policy.  Because the Plaintiff was not occupying one of the covered autos in the Transcontinental policy, even if an insured, she has no entitlement to UM/UIM coverage under the Business Auto coverage part.

With regard to the CGL coverage part of the Transcontinental policy, the Court finds that because no vehicles are specifically identified in this coverage part, it does not constitute an "automobile liability or motor vehicle liability policy" and, therefore, is not subject to R.C. 3937.18 mandates.  Because the CGL coverage part is not an automobile or motor vehicle liability policy, Transcontinental was not required to offer UM/UIM coverage.  Because the CGL coverage part does not include UM/UIM coverage, even if an insured, the Plaintiff has no entitlement to UM/UIM coverage under this part of the policy.

Because the Plaintiff has no entitlement to UM/UIM coverage under the Transcontinental policy issued Hope Homes, it follows that Nationwide has no entitlement to a *pro rata* contribution from Transcontinental.  WHEREFORE, the Court DENIES Nationwide's Motion for Summary Judgment as it is moot.

15

COPY

    (3)    **Plaintiff's Motion for Summary Judgment.**

In her April 9, 2002 Motion, the Plaintiff incorporates the arguments made by Nationwide in Section II of its Motion for Summary Judgment. Hence, the Plaintiff argues that she is an insured under the Transcontinental policy and, therefore, is entitled to UM/UIM coverage. As set forth above, the Court finds that the Plaintiff has no entitlement to UM/UIM coverage under either the Business Auto or CGL coverage parts of the Transcontinental policy issued to Hope Homes. The Court specifically finds that the Plaintiff has no entitlement to UM/UIM coverage under the Business Auto coverage part because she was not occupying one of the covered autos listed in the Transcontinental policy. With regard to the CGL coverage part, the Court finds that this coverage part does not constitute an automobile or motor vehicle policy and, therefore, is not subject to R.C. 3937.18 mandates. Because the CGL coverage part is not subject to R.C. 3937.18 mandates, Transcontinental was not required to offer UM/UIM coverage and such coverage does not arise by operation of law. Accordingly, the Court finds that the Plaintiff has no entitlement to UM/UIM coverage under either the Business Auto or CGL coverage parts of the Transcontinental policy. WHEREFORE, the Court DENIES the Plaintiff's Motion for Summary Judgment.

### CONCLUSION

WHEREFORE, upon due consideration and for good cause shown, the Court hereby:

(1)    GRANTS Transcontinental's Motion for Summary Judgment;

(2)    DENIES Nationwide's Motion for Summary Judgment as it is moot; and

(3)    DENIES the Plaintiff's Motion for Summary Judgment.

A STATUS CONFERENCE has been scheduled in this matter for **August 15, 2003 at 8:30 a.m.** Please note this date on your calendars. FAILURE TO APPEAR FOR ANY

16

SCHEDULED PRETRIAL, STATUS CONFERENCE, HEARING OR TRIAL MAY RESULT

IN SANCTIONS.

     IT IS SO ORDERED.

                                  JUDGE BRENDA BURNHAM UNRUH

Attorney Dean Konstand
Attorney John L. Cullen
Attorney Michael J. Spetrino
Attorneys Daniel A. Richards/Therese P. Joyce

Service: **Get by LEXSEE®**
Citation: **2002 Ohio 6986**

*2002 Ohio 6986, \*; 2002 Ohio App. LEXIS 7266, \*\**

BRENTON E. NIESE, PLAINTIFF-APPELLANT v. BETTY E. MAAG, ET AL., DEFENDANTS-APPELLEES

CASE NO. 12-02-06

COURT OF APPEALS OF OHIO, THIRD APPELLATE DISTRICT, PUTNAM COUNTY

2002 Ohio 6986; 2002 Ohio App. LEXIS 7266

December 13, 2002, Date of Judgment Entry

**SUBSEQUENT HISTORY:  [\*\*1]** As Corrected January 24, 2003. Discretionary appeal allowed by Niese v. Maag, 98 Ohio St. 3d 1563, 2003 Ohio 2242, 787 N.E.2d 1229, 2003 Ohio LEXIS 1178 (2003)

**PRIOR HISTORY:**  CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas Court. Original Opinion of December 13, 2002, Reported at: 2002 Ohio 6851, 2002 Ohio App. LEXIS 6638. Niese v. Maag, 2002 Ohio 6851, 2002 Ohio App. LEXIS 6638 (2002)

**DISPOSITION:** Judgment Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff insured filed an underinsured (UIM) motorist claim with defendant insurer as his employer's insurer, which was denied. Thereafter, the insured filed a complaint against several defendants including the insurer. The Putnam County Court of Common Pleas (Ohio) granted summary judgment in favor of the insurer. The insured appealed.

**OVERVIEW:** The insured suffered bodily injury while operating his own motorcycle when he collided with an automobile. The insured essentially argued that, although it was necessary for him to be included within the definition of "you" to be eligible for any UIM coverage under the policy pursuant to Scott-Pontzer, he should not be included within the definition of "you" for purposes of the UIM exclusions. The appellate court held that the language of the policy was consistent with former Ohio Rev. Code Ann. § 3937.18(J). The policy defined "you" as the named insured shown in the declaration and gave it the same meaning throughout the policy. Thus, the term "you" included employees of the corporate insured wherever it appeared in the policy. Consequently, the insured, as an employee of the insured corporation, fit within the definition of "you" under the policy for both inclusion and exclusion purposes. The insured was not driving a "covered auto." Therefore, as the insured was a "named insured" and was driving his own motor vehicle at the time of the accident which was not a "covered auto," the policy exclusion applied to the insured and he was not covered under the UIM policy.

**OUTCOME:** The judgment of the trial court was affirmed.

**CORE TERMS:** named insured, coverage, declaration, insured, driving, summary ju[...] covered auto, insurer, policy exclusion, bodily injury, motor vehicle, non-covered, o[...]



EXHIBIT

D

owned, entitled to judgment, insurance policy, matter of law, motorcycle, uninsured motorist coverage, assignment of error, ambiguous, premium

## LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN1*⬇ An appellate court reviews a grant of summary judgment de novo.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN2*⬇ Pursuant to Ohio R. Civ. P. 56(C), summary judgment is proper if the evidence filed in a case shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ohio Furthermore, summary judgment should be granted, if it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage

*HN3*⬇ Former Ohio Rev. Code Ann. § 3937.19(J)(1) allowed insurers to preclude uninsured/underinsured motorist coverage for bodily injury under the following circumstance: while the insured is operating a motor vehicle owned by a named insured, if the motor vehicle is not specifically identified in the policy under which the claim is made.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules

*HN4*⬇ It is well settled that an insurance policy is a contract and that the relationship between the insured and the insurer is purely contractual in nature. Insurance coverage is determined by reasonably construing the contract in conformity with the understood meaning of the language employed. Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Coverage Generally

*HN5*⬇ In an automobile insurance policy, the term "you" when the named insured shown in the declarations is a corporation, necessarily refers to its employees since a corporation can act only by and through real live persons.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules

*HN6*⬇ Since the Ohio Supreme Court has judicially defined the word, unless the policy of insurance provides a different definition under another provision of the policy, a court must apply the definition of "you" consistently throughout the policy.  More Like This Headnote

**COUNSEL:** MARTIN W. WILLIAMS, Attorney at Law, Toledo, Ohio, For Appellant.

MARK J. METUSALEM, Attorney at Law, Toledo, Ohio, For Appellee, Betty E. Maag.

ROBERT B. HOLLISTER, Attorney at Law, Findlay, Ohio, For Appellee, Betty E. Maag.

HENRY A. HENTEMANN, Attorney at Law, Cleveland, Ohio, For Appellee, Westfield Ins. Co.

**JUDGES:** SHAW, P.J. BRYANT and HADLEY, JJ., concur.

**OPINIONBY:** SHAW

**OPINION:**

**SHAW, P.J.**

[*P1]  This is an appeal from the judgment of the Putnam County Court of Common Pleas, which granted summary judgment to Defendant-Appellee, Westfield Insurance Company.

[*P2]  On November 7, 1999, Plaintiff-Appellant, Brenton Niese ("Niese"), suffered bodily injury while operating his own motorcycle when he collided with an automobile driven by Betty Maag. At the time of his accident, Niese was employed by W. C. Wood Company, Inc., which was insured through Westfield Insurance Company ("Westfield"). As a result of the seriousness [**2] of his injuries, Niese filed an underinsured ("UIM") motorist claim with Westfield as his employer's insurer on the authority of _Scott-Pontzer v. Liberty Mut. Ins. Co._ (1999), 85 Ohio St.3d 660, 1999 Ohio 292, 710 N.E.2d 1116. Westfield denied Niese's claim and on July 18, 2001, Niese filed a complaint against several defendants including Westfield. On March 15, 2002, Westfield filed a motion for summary judgment, which was granted on May 10, 2002.

[*P3]  Niese now appeals asserting a single assignment of error, which states

[*P4]  "THE TRIAL COURT ERRED IN FINDING THAT THE WESTFIELD POLICY DOES NOT PROVIDE UNDERINSURED MOTORIST COVERAGE TO BRENTON NIESE."

[*P5]  _HN1_ An appellate court reviews a grant of summary judgment de novo. _Lorain Natl. Bank v. Saratoga Apts._ (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. _HN2_ Summary judgment is proper if the evidence filed in a case shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Furthermore, summary judgment should be granted, "if it appears from such evidence or stipulation and only therefrom, that reasonable minds can come [**3] to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ.R. 56(C).

[*P6]  In his appeal, Niese first argues that the trial court relied upon an invalid exclusion in the Westfield policy to preclude him from UIM coverage. The Westfield policy precludes coverage, in relevant part, for "Bodily Injury sustained by: You while 'occupying' * * * any vehicle owned by you that is not a covered 'auto' for Uninsured Motorist Coverage under this Coverage Form." This language in a policy is also known as an "other-owned vehicle" exclusion. "You" is defined in the policy as the "named insured shown in the declarations." Furthermore, according to the Westfield policy, a "covered auto" for uninsured motorist coverage includes only those autos listed in the declaration and for which a premium is paid. The listed autos include a semi-tractor and five Chevy Luminas.

[*P7]  In order for the Westfield "other-owned vehicle" exclusion to be valid and



enforceable, the language of the exclusion must be consistent with former R.C. 3937.18 (J) [**4]  . n1 HN3 Former R.C. 3937.18(J)(1) allowed insurers to preclude UM/UIM coverage for bodily injury under the following relevant circumstance, "While the insured is operating * * * a motor vehicle owned by * * * a named insured * * *, if the motor vehicle is not specifically identified in the policy under which the claim is made * * *."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 This case is governed by R.C. 3937.18 as it was modified by S.B. 261 on September 7, 1999.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

 [*P8]  Niese argues that the Westfield policy exclusion does not comply with R.C. 3937.18 (J)(1) because the Westfield exclusion applies to non-covered autos owned by those who fall within the definition of "you," while R.C. 3937.18(J)(1) only authorizes an exclusion for non-covered autos owned by a "named insured." However, the Westfield policy defines "you" as "the named insured shown in the declaration." This type of exclusion is permissible under R.C. 3937.18(J)(1) [**5]  . Thus, the distinction that Niese attempts to make is insignificant. Furthermore, several Ohio courts have enforced exclusions in other UIM policies with language similar to that used in the exclusion section of the Westfield policy as consistent with R.C. 3937.18(J)(1). Jones v. Nationwide Ins. (July 23, 2001), Stark App. No. 2000CA00329, 2001 Ohio App. LEXIS 3336; Gaines v. State Farm Mut. Auto. Ins. Co., Franklin App. No. 01- AP-947, 2002 Ohio 2087, at PP28-29; Fleetwood v. Doe, Cuyahoga App. No. 80877, 2002 Ohio 3907, at P8; Uzhca v. Derham, Montgomery App. No. 19106, 2002 Ohio 1814. We agree with these other courts and find that the language in the Westfield UIM exclusion is consistent with R.C. 3937.18(J)(1).

 [*P9]  Niese further argues that if the Westfield exclusion is valid under R.C. 3937.18(J)(1), that the term "you," as used in this exclusion when defined as the "named insured," does not include him since he is not listed in the policy by name or title as a "named insured." HN4 It is well settled that an insurance policy is a contract and that the relationship between [**6] the insured and the insurer is purely contractual in nature. Nationwide Mut. Ins. Co. v. Marsh (1984), 15 Ohio St.3d 107, 109, 15 Ohio B. 261, 472 N.E.2d 1061. Insurance coverage is determined by reasonably construing the contract "in conformity with the understood meaning of the language employed." King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Id.

 [*P10]  The Supreme Court in Scott-Pontzer has examined the meaning of the term "you" when defined as "the named insured shown in the declarations" in an auto insurance policy. In that case, the court interpreted a policy which provided UIM coverage to those within the definition of "you." As the "named insured shown in the declarations" of the policy was a corporation and no individuals were listed, the court found the term "you" to be ambiguous as to who or what was covered by the UIM policy. Id. Consequently, the court examined the policy in favor of the insured and determined that HN5 the [**7] term "you" when the "named insured shown in the declarations" is a corporation, necessarily refers to its employees "since a corporation can act only by and through real live persons." Id. Consequently, the court found that the employee was an insured for UIM coverage as UIM coverage was designed "to protect persons, not vehicles." Id. Believing that the Scott-Pontzer decision declared an inherent ambiguity in the use of terms which must always be construed in his favor, Niese filed his claim for UIM coverage under the Westfield policy

pursuant to *Scott-Pontzer*.

**[\*P11]**  As stated above, in order to preclude coverage, the Westfield policy exclusion requires that the non-covered auto be owned by "you." Niese essentially argues that although it was necessary for him to be included within the definition of "you" to be eligible for any UIM coverage under the policy pursuant to *Scott-Pontzer*, he should not be included within the definition of "you" for purposes of the UIM exclusions. Specifically, Niese asserts that since the term "you" has been judicially determined to be ambiguous, by the *Scott-Pontzer* decision, it must be construed to his benefit anywhere it appears **[\*\*8]** in the Westfield policy, even if to do so produces inconsistent definitions of "you" within that policy. We disagree with Niese's contention and find that the sounder interpretation of the Westfield policy and the *Scott-Pontzer* decision would be to apply the term "you" consistently throughout a policy.

**[\*P12]**  The Westfield policy gives "you" the same meaning throughout the policy. Thus, it is our determination that the term "you" includes employees of the corporate insured wherever it appears in the Westfield policy. See, also, *Shaw v. State Farm Ins.*, Cuyahoga, App. No. 80471, 2002 Ohio 5330, at P35; *United Ohio Co. v. Bird* (May 18, 2001), Delaware App. No. 00-CA-31, 2001 Ohio App. LEXIS 2410 (finding that HN6✦"Since the Ohio Supreme Court has judicially defined the word, unless the policy of insurance provides a different definition under * * * [another] provision of the policy, we must apply the definition of "you" consistently throughout the policy"). Consequently, we find that Niese, as an employee of the W.C. Wood Co., fits within the definition of "you" under the Westfield policy for both inclusion and exclusion purposes.

**[\*P13]**  Moreover, as Niese was driving an auto **[\*\*9]** owned by him, in order for Niese to avoid the "other-owned vehicle" exclusion under R.C. 3937.18(J)(1) and the Westfield policy, the vehicle involved in the accident must have been a "covered auto." As stated above, the Westfield policy defined "covered auto" as one that is in the declaration for which a premium is paid. In this case, Niese was driving a motorcycle while the declaration lists five cars and a truck. Consequently, Niese was not driving a "covered auto." As Niese is a "named insured" and was driving his own motor vehicle at the time of the accident which was not a "covered auto," the policy exclusion applies to Niese and he is not covered under the Westfield UM/UIM policy. See, also, *Carmona v. Blankenship*, Franklin App. No. 02-AP-14, 2002 Ohio 5003, at P36 (finding that a policy with similar language excluded a person who was driving her own vehicle not listed in the declarations); *Jones v. Nationwide Ins.* (July 23, 2001), Stark App. No. 2000CA00329, 2001 Ohio App. LEXIS 3336; *Gaines*, supra, 2002 Ohio 2087; *Uzhca*, supra, 2002 Ohio 1814. The parties do not dispute the relevant facts. Thus, based on the foregoing, Westfield is entitled to judgment as a matter of law. Consequently, **[\*\*10]** Niese's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

**BRYANT and HADLEY, JJ., concur.**

Service:  **Get by LEXSEE®**
Citation:  **2002 Ohio 6986**
View:  **Full**
Date/Time:  Monday, November 3, 2003 - 9:15 AM EST

\* Signal Legend:
● -  Warning: Negative treatment is indicated
⚠ -  Caution: Possible negative treatment
✦ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available

**i** -  Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2003 Ohio LEXIS 1178**

*98 Ohio St. 3d 1563; 2003 Ohio 2242;*
*787 N.E.2d 1229; 2003 Ohio LEXIS 1178, ***

**Niese v. Maag.**

2003-0153

SUPREME COURT OF OHIO

98 Ohio St. 3d 1563; 2003 Ohio 2242; 787 N.E.2d 1229; 2003 Ohio LEXIS 1178

May 7, 2003, Decided

**NOTICE:  [*1]**   DECISION WITHOUT PUBLISHED OPINION

**PRIOR HISTORY:**  Putnam App. No. 12-02-06, **2002 Ohio 6986**. **Niese v. Maag, 2002 Ohio 6986, 2002 Ohio App. LEXIS 7266 (2002)**

**OPINION:**

**APPEALS ACCEPTED FOR REVIEW**
Discretionary appeal allowed and cause held for the decision in 2002-0610, *Green v. Westfield Ins. Co.,* Lucas App. No. L-01-1398, 2002 Ohio 1230; briefing schedule stayed.

Service: **Get by LEXSEE®**
Citation: **2003 Ohio LEXIS 1178**
View: Full
Date/Time: Friday, October 31, 2003 - 4:10 PM EST

\* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
✚ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2003 ohio 360**

*2003 Ohio 360; 2003 Ohio App. LEXIS 381, \**

CAROL JEAN MAZZA, Appellant v. AMERICAN CONTINENTAL INSURANCE COMPANY, et al., Appellees

C.A. No. 21192

COURT OF APPEALS OF OHIO, NINTH APPELLATE DISTRICT, SUMMIT COUNTY

2003 Ohio 360; 2003 Ohio App. LEXIS 381

January 29, 2003, Decided

**SUBSEQUENT HISTORY:** Discretionary appeal allowed by Mazza v. Am. Cont'l Ins. Co., 2003 Ohio 3717, 2003 Ohio LEXIS 1836 (Ohio, July 15, 2003)

**PRIOR HISTORY:** [\*1] APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO. CASE No. CV 01 06 2986.

**DISPOSITION:** Trial court's judgement was affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee was injured in a car accident, while not in a car owned or leased by her employer and while not acting within the scope of her employment, and sued defendants, her employer's auto, medical, excess, and high limit insurers, for uninsured motorist (UM) and underinsured motorist (UIM) coverage. The employee appealed a Court of Common Pleas, Summit County (Ohio), summary judgment for the insurers.

**OVERVIEW:** The appeals court, in affirming, relied upon the Scott-Pontzer and other decisions to conclude that the employee was an "insured" under the auto policy, but excluded from coverage since she was driving a non-covered (non-listed) car; the exclusion applied both to her (an insured) and her employer (the named insured). The health policy was not an auto policy requiring UM/UIM coverage to be offered by operation of law since it was not a policy which could serve as proof of financial responsibility since it specifically identified no covered cars as defined in Ohio Rev. Code Ann. §§ 3937.18(L), 4509.01(K); the fact that the policy included "parking" and "exclusive use" exceptions did not alter the "specification" conclusion. The employee was not covered under the excess policy since she was not an insured--she was not acting within the scope of employment and she was not covered under the underlying auto policy, and UM/UIM coverage had been offered and accepted by the employer. The employee was not covered under the high limit policy since she was not an insured as covered by the excess policy.

**OUTCOME:** The appeals court affirmed the judgment.

**CORE TERMS:** coverage, insured, motor vehicle, named insured, liability policy, automobile liability, bodily injury, declarations, parking, underlying policy, assignment of error, proof of financial responsibility, entitled to coverage, scope of employment, motor vehicles, excess policy, umbrella, insurer, operation of law, assignments of error, entity, driving, po

**EXHIBIT**

E

insurance, liability coverage, insurance policies, tortfeasor, occupying, rented, loaned, insurance policy

## LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > Appeals > Standards of Review > De Novo Review 📑
**HN1**⬇ Where the parties stipulate to the facts upon which the trial court bases its decision; therefore, the only issues before the trial court are purely questions of law. The Ohio Rule, as deduced from the decided cases, would seem to be that where the ultimate fact is undisputed, ordinarily a question of law is presented for determination by the court. An appellate court must stand in the shoes of the trial court when reviewing appeals from judgments rendered solely on stipulated facts, that is, in reviewing assignments of error, an appellate court must apply a de novo standard of review. Under the de novo standard of review, an appellate court does not give deference to a trial court's decision. More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage 📑
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage 📑
**HN2**⬇ In holding that an employee is an "insured" for purposes of uninsured motorist and underinsured motorist coverage, the Scott-Pontzer rule explains that it would be reasonable to conclude that "you" also includes employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Naming the corporation as the insured is meaningless unless the coverage extends to some person or persons--including to the corporation's employees. More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage 📑
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage 📑
**HN3**⬇ See Ohio Rev. Code Ann. § 3937.18(J).

Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage 📑
**HN4**⬇ The Ohio Supreme Court has held that for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties. More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules 📑
Insurance Law > Motor Vehicle Insurance > Coverage Generally 📑
**HN5**⬇ In concluding that the term "you" in an automobile insurance policy also included the corporation's employees, a court has held that the term "you" should be applied consistently throughout the policy, without differentiating between the "named insured" and employees of the "named insured." More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules 📑
Insurance Law > Motor Vehicle Insurance > Coverage Generally 📑
**HN6**⬇ To hold that "you" refers to both the "named insured" (i.e., the corporation) and the "insured" (i.e., the employee) only when the term is used in inclusions for coverage is not a result the Scott-Pontzer holding envisions when it concludes that the term "you" includes a corporation's employees. Rather, the term "you" must be consistently applied in exclusions from coverage, as well as inclusions for coverage. More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Exclusions Generally 📑

*HN7* A "parking" exception provides that a general exclusion does not apply when parking an automobile on, or on the ways next to, premises an insured owns or rents, provided the automobile is not owned by or rented or loaned to an insured.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Exclusions Generally
*HN8* An "exclusive use" exception provides that the exclusion does not apply to bodily injury or property damage arising out of the operation of any automobile or mobile equipment that is used exclusively on the insured's premises.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
*HN9* See former Ohio Rev. Code Ann. § 3937.18(A).

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
*HN10* With respect to whether the provisions of former Ohio Rev. Code Ann. § 3937.18 apply to a policy of primary insurance which provides coverage for claims of liability arising out of the use of hired or non-owned automobiles, but is not issued for delivery with respect to some particular motor vehicle, a policy that provides liability coverage for non-owned or hired motor vehicles is sufficient to satisfy the requirement of § 3937.18. That is, the policy is an "automobile or motor vehicle liability policy" for purposes of § 3937.18. Further, a policy that qualifies as an "automobile liability or motor vehicle policy" under § 3937.18 is required to offer uninsured and underinsured motorist coverage and if it does not, coverage will arise by operation of law.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
*HN11* Ohio Rev. Code Ann. § 3937.18(L) provides a definition of "automobile or motor vehicle policy of insurance," thereby narrowing the applicability of the Selander holding to cases decided after the inception of Ohio Rev. Code Ann. § 3937.18 (L).  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
*HN12* See Ohio Rev. Code Ann. § 3937.18(L).

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
*HN13* With respect to Ohio Rev. Code Ann. § 3937.18(L), "proof of financial responsibility" is defined in Ohio Rev. Code Ann. § 4509.01 (K).  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
*HN14* See Ohio Rev. Code Ann. § 4509.01(K).

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
*HN15* According to Ohio Rev. Code Ann. §§ 3937.18(L), 4509.01(K), an insurance policy may be deemed an "automobile liability or motor vehicle liability" policy if the

policy serves as proof of financial responsibility for owners or operators of the motor vehicles specifically identified in the policy. If the policy is not an "automobile liability or motor vehicle liability policy" then Ohio Rev. Code Ann. § 3937.18 does not apply, and uninsured motorist and underinsured motorist coverage does not arise by operation of law. More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
**HN16** Ohio Rev. Code Ann. § 3937.18(L)(2) also provides that an "automobile liability or motor vehicle liability policy of insurance" can include any umbrella liability policy of insurance written as excess over one or more policies described in Ohio Rev. Code Ann. § 3937.18(L)(1). More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
**HN17** In discussion of the application of Ohio Rev. Code Ann. § 3937.18(L) to policies containing "parking" exceptions, an insurance policy is not an "automobile liability or motor vehicle liability policy of insurance" where the policy does not identify a single individual automobile for which uninsured motorist and underinsured motorist coverage is applicable to employees or automobiles used outside the scope of employment. More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
**HN18** The phrase "not owned by or rented or loaned to you or the insured" does not "specifically identify" autos pursuant to the definition of automobile or motor vehicle liability. The policy cannot serve as proof of financial responsibility for "owners or operators of the motor vehicles specifically identified in the policy," if the policy does not specifically identify any motor vehicles. Accordingly, a policy is not one which serves as proof of financial responsibility for owners or operators of the motor vehicles specifically identified in the policy of insurance and cannot, therefore, be an automobile or motor vehicle liability policy pursuant to Ohio Rev. Code Ann. § 3937.18. Because the policy is not an automobile or motor vehicle liability policy, § 3937.18 does not apply and the insurer is not required to offer uninsured motorist and underinsured motorist coverage. More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
**HN19** A "parking" exception that specifically applies to vehicles "not owned by or rented or loaned to an insured" does not specifically identify vehicles covered by the policy and does not have the effect of transforming the policy into an "automobile liability or motor vehicle liability policy of insurance," and, thus, the policy is not subject to Ohio Rev. Code Ann. § 3937.18 on that basis. More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
**HN20** Where an "exclusive use" exception contained in a policy that applies to any automobile exclusively used on an employer's premises where the phrase "any automobile" does not specifically identify autos as required by Ohio Rev. Code Ann. § 3937.18(L), the same analysis that is applied when discussing the effect of a "parking" exception also applies to the "exclusive use" exception. By failing to list the specific autos covered in the policy, the policy is not one which "serves as proof of financial responsibility for owners or operators of the motor vehicles specifically identified in the policy of insurance." Ohio Rev. Code Ann. § 3937.18

(L)(1). Therefore, the policy does not qualify as an "automobile liability or motor vehicle liability policy" pursuant to <u>Ohio Rev. Code Ann. § 3937.18(L)</u>. As such, the insurer is not required to provide underinsured motorist coverage.  <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Excess Insurance</u> > <u>Excess Insurer Duties</u>
**HN21** What is referred to as an "excess insurance policy" provides vertical coverage above the limits of the insured's primary policy. That is, an excess policy provides secondary coverage or coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.  <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Uninsured Motorists Coverage</u>
<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Underinsured Motorists Coverage</u>
**HN22** In the Scott-Pontzer decision, the insurer had failed to offer uninsured motorist (UM) coverage and the umbrella/excess policy had not contained an UM coverage form that had defined insureds for purposes of UM coverage. Because there had been no showing that UM coverage had been offered and rejected, UM coverage had arisen by operation of law under the policy because even excess liability insurance policies must comply with <u>Ohio Rev. Code Ann. § 3937.18</u>. The restriction, which only had allowed coverage to those employees acting within the scope of their employment, had not applied to UM coverage. The Ohio Supreme Court has held that any language in the umbrella/excess policy restricting coverage is intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage. By holding that the insurer's failure to provide UM coverage to the insured prohibited the application of the "scope of employment" requirement to UM coverage, the Scott-Pontzer decision intimates that if the insurer has offered, and the insured has accepted, both UM and underinsured (UIM) coverage under the umbrella/excess policy, then the "scope of employment" requirement would apply to excess liability coverage and UM coverage.  <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Uninsured Motorists Coverage</u>
<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Underinsured Motorists Coverage</u>
**HN23** The Scott-Pontzer decision and Demetry decision are both cases in which the insurer had failed to offer uninsured motorist (UM) and underinsured motorist (UIM) coverage under an umbrella/excess liability policy. UM/UIM coverage arises by operation of law, and as a result, both courts conclude that the restrictions or exclusions contained in each policy do not apply to UM/UIM coverage. In a case that involves an excess policy that includes UM/UIM coverage by contract, a court can safely conclude that the "scope of employment" requirement applies to both excess liability and UIM coverage.  <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Claims & Contracts</u> > <u>Policy Interpretation</u> > <u>Contract Interpretation Rules</u>
**HN24** The Scott-Pontzer holds that policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured.  <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Underinsured Motorists Coverage</u>
<u>Insurance Law</u> > <u>Excess Insurance</u> > <u>Excess Insurer Duties</u>
**HN25** In the context of determining whether or not there exists required uninsured motorist and underinsured motorist coverage and otherwise, where, according to the terms of general coverage contained in a high limit policy, and the exclusionary provisions, a party is entitled to coverage under the high limit policy

if the party (1) is an insured entitled to coverage under the immediate underlying policy, and (2) has exhausted payments under the applicable amounts listed in the declarations, and where a person is not an "insured" who is entitled to coverage under the "immediate underlying policy," and where the "immediate underlying policy" is an excess policy under which the person is not entitled to coverage because the person is precluded from coverage under both of its underlying policies, as the person is not entitled to coverage under the underlying policy (the excess policy), the person is necessarily precluded from coverage under the high limit policy.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Standards Generally 🔚

HN26⤵ Cross-assignments of error by an appellee who has not filed a notice of appeal may be considered only when necessary to prevent reversal. Where the court of appeals determines that the trial court committed no error prejudicial to the appellant in the errors assigned and argued, Ohio R. App. P. 12(B) requires the appellate court to refrain from consideration of any error assigned and argued in the brief of the appellee on cross-appeal.  More Like This Headnote

**COUNSEL:** JOHN J. LYNETT, JR. and RICHARD V. ZURZ, JR., Attorneys at Law, Akron, Ohio, for Appellant.

PAUL D. EKLUND and KIMBERLY A. BRENNAN, Attorneys at Law, Cleveland, Ohio, for Appellee American Continental Insurance Company.

EDWARD T. SYLVESTER and RONALD A. RISPO, Attorneys at Law, Cleveland, Ohio, for Appellee American Manufactures Mutual Insurance Company.

**JUDGES:** BETH WHITMORE, Judge. SLABY, P. J., BATCHELDER, J., CONCUR.

**OPINIONBY:** BETH WHITMORE

**OPINION:** DECISION AND JOURNAL ENTRY

Dated: January 29, 2003

This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:

WHITMORE, Judge.

Plaintiff-Appellant Caroljean Mazza has appealed from a decision of the Summit County Court of Common Pleas that granted judgment in favor of Defendants-Appellees American Manufacturers Mutual Insurance Company and American Continental Insurance Company. We affirm.

I

While driving along Memorial Parkway in Akron, Ohio on February 23, 2000, Appellant was struck head-on by a vehicle driven **[*2]** by Viola E. Lindsay ("tortfeasor"). Appellant suffered severe injuries as a result of the accident. The tortfeasor maintained a personal automobile liability policy with Nationwide Insurance Company, with policy limits of $ 100,000. Appellant maintained a personal automobile liability policy with Safeco, which provided underinsured motorist coverage in the amount of $ 50,000 and medical pay amounting to $ 5,000.

At the time of the accident, Appellant was an employee of Cuyahoga Falls General Hospital ("CFGH"); when the accident occurred, however, Appellant was not driving a car owned or leased by CFGH, nor was she acting in the course or scope of her employment with CFGH. CFGH maintained several insurance policies. The hospital was insured by American Manufacturers Mutual Insurance Company ("AMMIC") and American Continental Insurance Company ("ACI"). n1 As an employee of CFGH, Appellant attempted to submit claims for uninsured motorist ("UM") and underinsured motorist ("UIM") coverage to AMMIC and ACI. AMMIC consented to Appellant's release and waiver of subrogation rights in regards to offers made to Appellant by the tortfeasor's insurance provider, with the understanding that any **[*3]** monies recovered would be setoff from any coverage available under the AMMIC policy. Despite AMMIC's consent to allow Appellant to settle with the tortfeasor's insurance company, AMMIC, as well as ACI, denied Appellant's claim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 CFGH maintained three insurance policies with ACI (Policy Numbers: 00K079, 00L079, and 00V079).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Appellant responded by bringing a declaratory judgment action against both AMMIC and ACI seeking underinsured motorist benefits pursuant to _Scott-Pontzer v. Liberty Mut. Fire Ins. Co._ (1999), 85 Ohio St.3d 660, 1999 Ohio 292, 710 N.E.2d 1116. On June 26, 2002, the trial court granted judgment in favor of AMMIC and ACI, holding that: (1) as an insured covered by the AMMIC policy, Appellant was excluded from coverage because she was operating a vehicle not identified in the policy; (2) ACI's Healthcare System Liability policy was not an "automobile liability or motor vehicle liability policy of insurance," as that term is defined in R.C. 3937.18(L), and thus Appellant **[*4]** was not covered under such a policy; (3) Appellant was not entitled to coverage under ACI's Excess Liability policy because she was covered under the underlying policy, nor was she acting within the course and scope of her employment with CFGH when the accident occurred; and (4) Appellant was not entitled to coverage under ACI's High Limit policy because she was excluded from coverage under the underlying policy. Appellant has timely appealed, asserting four assignments of error. AMMIC has cross-appealed, asserting three assignments of error, which we have consolidated to facilitate review.

II

As an initial matter, we note that _HN1_ the parties stipulated to the facts upon which the trial court based its decision; therefore, the only issues before the trial court were purely questions of law. See _Bennett v. Sinclair Refining Co._ (1944), 144 Ohio St. 139, 148-149, 57 N.E.2d 776 ("The Ohio Rule, as deduced from the decided cases, would seem to be that where the ultimate fact is undisputed, ordinarily a question of law is presented for determination by the court [.]") An appellate court must "stand[] in the shoes of the trial court when reviewing appeals from judgments **[*5]** rendered solely on stipulated facts." _Cincinnati Insurance Co. v. Slutz_ (Oct. 13, 1987), 5th Dist. No. CA-7109, 1987 Ohio App. LEXIS 9238, at *3-4. That is, in reviewing Appellant's four assignments of error, we must apply a de novo standard of review. See _Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm_ (1995), 73 Ohio St.3d 107, 108, 1995 Ohio 214, 652 N.E.2d 684 (stating that questions of law must be reviewed by an appellate court de novo); see, also, _Cleveland Elec. Illum. Co. v. Pub. Util. Comm._ (1996), 76 Ohio St. 3d 521, 523, 1996 Ohio 298, 668 N.E.2d 889. Under the de novo standard of review, an appellate court does not give deference to a trial court's decision. _Akron v. Frazier_ (2001), 142 Ohio App. 3d 718, 721, 756 N.E.2d 1258.

Assignment of Error Number One

"THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT'S *SCOTT-PONTZER* CLAIM IS BARRED BY AN 'OTHER OWNED AUTO' PROVISION IN THE BUSINESS AUTO POLICY ISSUED BY AMMIC TO APPELLANT'S EMPLOYER."

In Appellant's first assignment of error, she has essentially argued that the trial court erred when it concluded that she was excluded from coverage under the AMMIC policy. Specifically, she **[*6]** has contended that because she is an "insured," and not a "named insured," the "other owned auto" exclusion contained in the policy does not apply to her. We disagree.

The definition of "insured" under the AMMIC policy

Appellant has argued that, pursuant to the Supreme Court of Ohio's decision in *Scott-Pontzer*, supra, she is an "insured" under the AMMIC policy. In *Scott-Pontzer*, the court addressed whether a corporation's employees were entitled to UIM coverage under the corporation's insurance policies. More specifically, the court had to determine if the definition of "insured" included a corporation's employees. A provision in the policy defined "insured" as:

"B. Who Is An Insured

"1. You.

"2. If you are individual, any family member.

"3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

"4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." *Scott-Pontzer*, 85 Ohio St. 3d at 663.

**HN2** In holding that an employee was an "insured" for purposes **[*7]** of UM and UIM coverage, the court explained:

"It would be reasonable to conclude that 'you,' *** also includes *** employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons - including to the corporation's employees." *Scott-Pontzer*, 85 Ohio St.3d at 664.

In the instant matter, the policy between CFGH and AMMIC contains a similar provision that defines "insured" in the section of the policy entitled "OHIO UNINSURED MOTORISTS COVERAGE -- BODILY INJURY." The pertinent provision states:

"B. Who Is An Insured

"1. You.

"2. If you are an individual, any 'family member.'

"3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.

"4. Anyone for damages he or she is entitled to recover because of 'bodily **[*8]** injury' sustained by another 'insured.'"

Furthermore, the policy also provides that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations." The "named insured" is listed as CFGH. Therefore, the term "you," as used in determining "who is an insured," includes CFGH.

As the definition of "insured" contained in the present policy is identical to the definition of "insured" contained in the *Scott-Pontzer* policy, we conclude that Appellant, as an employee of the "named insured," CFGH, is also an insured for purposes of UIM coverage under the AMMIC policy. As such, we must next determine whether Appellant is excluded from recovery because of the "other owned auto" exclusion contained in the policy.

The "other owned auto" exclusion

AMMIC has contended, and the trial court agreed, that even if Appellant is an "insured" under the policy, she is excluded from coverage because of the "other owned auto" exclusion contained in the section of the policy entitled "OHIO UNINSURED MOTORISTS COVERAGE -- BODILY INJURY." The relevant provision of that section states:

"This insurance does not apply to:

"***

"5. 'Bodily Injury' sustained by:

"a. You while **[*9]** 'occupying' or when struck by any vehicle owned by you that is not a covered 'auto' for Uninsured Motorists Coverage under this Coverage form[.]"

According to the above-cited provision, an insured is excluded from coverage when driving a

non-covered vehicle, i.e., a vehicle that is not specifically identified in the declarations. The declarations only lists five "covered" autos: a 1988 Chevy pickup, a 1997 Dodge truck, a 1998 GMC truck, and two 1999 Plymouth Voyagers. When the accident occurred, Appellant was driving a 1997 Acura, which is a vehicle not listed in the declarations.

Because Appellant was driving a non-covered vehicle when the accident occurred, it would appear that she is excluded from UIM coverage under the AMMIC policy. Appellant, however, has argued that the "other owned auto" provision does not apply to her in light of the language contained in R.C. 3937.18(J). n2 That section provides:

HN3 "The coverages offered under [ R.C. 3937.18(A)] *** may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:

"(1) While the [*10] insured is operating or occupying a motor vehicle owned by *** a named insured *** if the motor vehicle is not specifically identified in the policy under which a claim is made[.]" R.C. 3937.18(J)(1).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 HN4 The Ohio Supreme Court has held that "for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 1998 Ohio 381, 695 N.E.2d 732, syllabus. The effective date of the AMMIC policy was May 1, 1999, and it expired on May 1, 2000. Therefore, this Court will apply the version of R.C. 3937.18 that was in effect on May 1, 1999. Thus, we apply R.C. 3937.18 as amended by Am.Sub. H.B. 261, which became effective September 3, 1997.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Moreover, the AMMIC policy defines "you" and "your" as [*11] "the Named Insured shown in the declarations." CFGH is the only party named in the declarations.

Appellant has argued that R.C. 3937.18(J)(1) distinguishes between an "insured" and a "named insured." The term "insured," Appellant has contended, is not interchangeable with the term "named insured"; the latter term, she has argued, refers only to the person listed in the declarations. She has further argued that because she is an "insured," and not a "named insured," the "other owned auto" exclusion should not apply. In her brief, Appellant has contended that "the 'other owned auto' exclusion authorized by R.C. 3937.18(J)(1) cannot be expanded to include any vehicle owned by any insured." (Emphasis added.) According to Appellant's reading of R.C. 3937.18(J)(1), only those vehicles owned by a "named insured," (viz., CFGH), trigger the exclusion.

The appellate court in Niese v. Maag, 3rd Dist. No. 12-02-06, 2002 Ohio 6851, addressed an argument similar to the one posited by Appellant. In Niese, the insurance provider, Westfield Insurance Company, denied a claim for UIM coverage submitted [*12] by the named insured's employee, Brenton Niese, filed under the authority of Scott-Pontzer. Niese filed a

complaint against Westfield seeking UIM coverage, and the insurance provider moved for summary judgment. The trial court granted the motion and Niese appealed.

On appeal, Westfield argued, among other things, that the "other-owned auto" exclusion contained in the policy precluded Niese from UIM coverage. The "other owned auto" exclusion precluded coverage for "Bodily Injury sustained by: You while 'occupying' *** any vehicle owned by you that is not a covered 'auto' for Uninsured Motorist Coverage under this Coverage Form." _Niese_, 2002 Ohio 6851, at P6. "You," as the term was used in the "other owned auto" exclusion, referred to the "named insured" shown in the declarations. _Id., 2002 Ohio 6851_ Niese argued that since the term "you" referred to only the "named insured," and because he was not listed in the policy by name or title as the "named insured," the exclusion could not apply to him. The appellate court rejected Niese's argument and held that [HN5]the term "you" should be applied consistently throughout the policy, without differentiating between the "named insured" and employees of the "named insured." **[\*13]** " _Id., 2002 Ohio 6851, at P11._ Thus, the court concluded that the term "you" also included the corporation's employees. _Id., 2002 Ohio 6851, at P12._

In the case sub judice, Appellant has presented the same argument as did the employee in _Niese_. Appellant has essentially argued that, although the Ohio Supreme Court in _Scott-Pontzer_ defined "you" to include a corporation and its employees, the term "you" when used in the "other owned auto" exclusion should only apply to CFGH as the "named insured," and not to her as an employee of the "named insured." It appears that Appellant wants to take advantage of the inclusions contained in the AMMIC policy, but she does not want to be bound by to any of the policy's exclusions.

We believe that [HN6]to hold that "you" refers to both the "named insured" (i.e., the corporation) and the "insured" (i.e., the employee) only when the term is used in inclusions for coverage is not a result the _Scott-Pontzer_ court envisioned when it concluded that the term "you" included a corporation's employees. Rather, the term "you" must be consistently applied in exclusions from coverage, as well as inclusions for coverage. Therefore, we agree with the holding in _Niese_. The term "you, **[\*14]** " as it is used in the "other owned auto" exclusion, applies to both CFGH and Appellant. See, also, _Agudo De Uzhca v. Derham,_ 2nd Dist. No. 19106, 2002 Ohio 1814, at P28, appeal allowed (2002), 96 Ohio St. 3d 1511, 2002 Ohio 4950, 775 N.E.2d 854.

Because we reject Appellant's argument that this Court should differentiate between the "named insured" and the "insured," we must necessarily conclude that Appellant is excluded from UIM coverage under the AMMIC policy. Consequently, we find that Appellant's first assignment of error lacks merit.

Assignment of Error Number Two

"THE TRIAL COURT ERRED IN CONCLUDING THAT THE HEALTHCARE SYSTEM LIABILITY POLICY, NO. 00K079, ISSUED BY ACI TO APPELLANT'S EMPLOYER IS NOT A MOTOR VEHICLE LIABILITY INSURANCE POLICY."

In Appellant's second assignment of error, she has argued that the trial court erred when it excluded coverage under the ACI Healthcare System Liability policy ("ACI Healthcare policy"). Specifically, she has argued that the ACI Healthcare policy is a "motor vehicle liability policy" from which UIM coverage arises by operation of law. We disagree.

The ACI Healthcare policy provided CFGH with coverage for, among other things, **[*15]** medical claims and bodily injury. The policy contains an exclusionary provision by which the policy did not apply, and the company would not pay damages for, any claim arising out of "automobile liability hazard." An "automobile liability hazard" is defined as "BODILY INJURY or PROPERTY DAMAGE arising out of the ownership, operation, maintenance, use, loading or unloading, or entrustment to others of any AUTOMOBILE by an INSURED."

This general exclusion for "automobile liability hazards" is subject to two exceptions: the "parking" exception and the "exclusive use" exception. *HN7*The "parking" exception provides that the general exclusion does not apply when "parking an AUTOMOBILE on, or on the ways next to, premises an INSURED owns or rents, provided the AUTOMOBILE is not owned by or rented or loaned to an INSURED[.]" *HN8*The "exclusive use" exception provides that the exclusion does not apply to "BODILIY INJURY or PROPERTY DAMAGE arising out of the operation of any AUTOMOBILE or mobile equipment that is used exclusively on the INSURED's premises[.]"

**1**Appellant has argued that because the policy contains two exceptions to the general exclusion for "automobile liability hazards, **[*16]** " the policy provides sufficient liability insurance to be construed as a motor vehicle liability policy pursuant to *Selander v. Erie Ins. Group* (1999), 85 Ohio St.3d 541, 1999 Ohio 287, 709 N.E.2d 1161. Such a policy, Appellant has argued, is subject to R.C. 3937.18, which requires UM and UIM coverage unless specifically rejected. R.C. 3937.18(C).

In *Selander*, the Ohio Supreme Court addressed whether "the provisions of R.C. 3937.18 apply to a policy of primary insurance which provides coverage for claims of liability arising out of the use of hired or non-owned automobiles, but is not issued for delivery with respect to some particular motor vehicle[.]" *Selander*, 85 Ohio St.3d at 542. The version of R.C. 3937.18(A) applied by the *Selander* court provided:

*HN9*"'No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this **[*17]** state with respect to any motor vehicle registered or principally garaged in this state,' unless both uninsured and underinsured motorist coverage are provided." *Selander*, 85 Ohio St.3d at 543.

The court concluded that *HN10*a policy that provides liability coverage for non-owned or hired motor vehicles is sufficient to satisfy the requirement of R.C. 3937.18. Id. at 544-545. That is, the policy is an "automobile or motor vehicle liability policy" for purposes of R.C. 3937.18. Further, the court held that a policy that qualifies as an "automobile liability or motor vehicle policy" under R.C. 3937.18 is required to offer uninsured and underinsured motorist coverage and if it does not, coverage will arise by operation of law. *Selander*, 85 Ohio St.3d at 546.

In the instant matter, the trial court correctly noted that *Selander* was decided prior to the enactment of R.C. 3937.18(L), and, thus, is inapplicable to the present case. n3 *HN11*R.C. 3937.18(L) provides a definition of "automobile or motor vehicle policy of insurance, **[*18]** " thereby narrowing the applicability of *Selander* to cases decided after the inception of R.C. 3937.18(L). R.C. 3937.18(L) provides in pertinent part:

*HN12*"As used in this section, 'automobile liability or motor vehicle liability policy of insurance' means:

"(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by [ R.C. 4509.01(K)], for owners or operators of the motor vehicles specifically identified in the policy of insurance."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The effective date of the ACI Healthcare policy was September 27, 2000, and it expired on September 27, 2001. Pursuant to *Ross, supra,* we must apply the version of R.C. 3937.18 that was in effect on September 27, 2000.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Further, [HN13] "proof of financial responsibility" is defined as:

[HN14] "Proof of ability to respond in damages for liability, on account of accidents occurring subsequent [*19] to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident." R.C. 4509.01(K)

[HN15] According to R.C. 3937.18(L) and R.C. 4509.01(K), an insurance policy may be deemed an "automobile liability or motor vehicle liability" policy if the "policy [serves] as proof of financial responsibility for owners or operators of *the motor vehicles specifically identified in the policy*." n4 (Emphasis sic.) *Gilcreast-Hill v. Ohio Farmers Ins. Co.,* 9th Dist. No. 20983, 2002 Ohio 4524, at P19. If the policy is not an "automobile liability or motor vehicle liability policy" then R.C. 3937.18 does not apply, and UM/UIM coverage does not arise by operation of law. See *Abate v. Pioneer Mutual Cas. Co.* (1970), 22 Ohio St.2d 161, 258 N.E.2d 429, [*20] paragraphs one and two of the syllabus.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 [HN16] R.C. 3937.18(L)(2) also provides that an "automobile liability or motor vehicle liability policy of insurance" can include "any umbrella liability policy of insurance written as excess over one or more policies described in [ R.C. 3937.18(L)(1)]." We need not address whether this definition of automobile or motor liability policy applies to the ACI Healthcare policy because said policy is not an umbrella liability policy.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This Court has previously addressed the application of R.C. 3937.18(L) to insurance policies similar to the ACI Healthcare policy and the effect of "parking" exceptions. In *Gilcreast-Hill,*

an employee, Felicia Gilcreast-Hill, attempted to submit an underinsured motorist claim under the commercial general liability policy that her employer maintained with Ohio Farmers Insurance Company. Ohio Farmers denied the claim and Gilcreast-Hill brought a declaratory judgment action **[*21]** against the insurer seeking UIM benefits. Ohio Farmers moved for summary judgment and the trial court granted the motion on the ground that *HN17* the insurance policy was not an "automobile liability or motor vehicle liability policy of insurance" because the policy did not identify a single individual automobile for which UM/UIM coverage is applicable to employees or automobiles used outside the scope of employment. The trial court also found that the policy did not serve as proof of financial responsibility for Gilcreast-Hill, and, therefore, there was no requirement to offer UM/UIM coverage.

On appeal, this Court affirmed the decision of the trial court. The Ohio Farmers insurance policy excluded coverage for "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." *Gilcreast-Hill*, 2002 Ohio 4524, at P20. The policy provided an exception to this general exclusion; the exclusion did not apply to "parking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured[.]" **[*22]** *Gilcreast-Hill*, 2002 Ohio 4524, at P20.

Gilcreast-Hill argued that the "parking" exception to the policy exclusion extended liability coverage to the specified categories of autos, i.e., non-owned, non-rented, and non-loaned automobiles. We rejected Gilcreast-Hill's argument and held:

*HN18* "The phrase 'not owned by or rented or loaned to you or the insured' does not 'specifically identify' autos pursuant to the definition of automobile or motor vehicle liability. The policy cannot serve as proof of financial responsibility for 'owners or operators of the *motor vehicles specifically identified* in the policy,' if the policy does not specifically identify any motor vehicles. Accordingly, Ohio Farmers' CGL policy is not one which 'serves as proof of financial responsibility *** for owners or operators of the motor vehicles specifically identified in the policy of insurance' and cannot, therefore, be an automobile or motor vehicle liability policy pursuant to R.C. 3937.18." (Emphasis sic.) *Gilcreast-Hill*, 2002 Ohio 4524, at P28.

Because the policy was not an automobile or motor vehicle liability policy, this Court concluded that R.C. 3937.18 did not apply and **[*23]** Ohio Farmers was not required to offer UM/UIM coverage. *Gilcreast-Hill*, 2002 Ohio 4524, at P29.

The "parking exception" contained in the ACI Healthcare policy is similar in language to the exception contained in *Gilcreast-Hill*. *HN19* The "parking" exception specifically applies to vehicles "not owned or rented or loaned to an INSURED." And, like the exception in *Gilcreast-Hill*, the exception contained in the ACI Healthcare policy does not specifically identify vehicles covered by the policy. Pursuant to our holding in *Gilcreast-Hill*, we conclude that the "parking" exception contained in the ACI Healthcare policy does not have the effect of transforming the policy into an "automobile liability or motor vehicle liability policy of insurance," and, thus, the policy is not subject to R.C. 3937.18 on that basis. See, also, *Bowling v. St. Paul Fire & Marine Ins. Co.*, 149 Ohio App. 3d 290, 2002 Ohio 4933, at P19-22, 776 N.E.2d 1175; *Gruelich v. Hartford*, 8th Dist. No. 80987, 2002 Ohio 7229, at P50; *Agudo De Uzhca v. Derham*, 2002 Ohio 1814, at P54-55; *Devore v. Richmond*, 6th Dist. No. WD-01-044, 2002 Ohio 3965, at P47, **[*24]** appeal not allowed, 97 Ohio St. 3d 1484, 2002 Ohio 6866, 780 N.E.2d 287. n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 The appellate districts have not reached a consensus as to the effect of "parking" exceptions. The fifth district, for example, has held that "parking" exceptions have the effect of transforming insurance policies into "automobile liability or motor liability policies" for purposes of R.C. 3937.18. See *Cox v. State Farm Fire & Cas. Co.*, 5th Dist. No. 2001 CA00117, 2002 Ohio 3076, at P21. The issue of whether "parking" exceptions transform a policy into an "automobile liability or motor liability policy" is now pending before the Ohio Supreme Court. See *Burkhardt v. CNA Ins. Co.*, 5th Dist. No. 2001 CA00265, 2002 Ohio 903, appeal accepted for review, 96 Ohio St. 3d 1438, 2002 Ohio 3344, 770 N.E.2d 1048.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

HN20 The "exclusive use" exception contained in the ACI Healthcare policy applies to any automobile exclusively used on CFGH's premises. The phrase "any automobile" does not specifically identify autos [*25] as required by R.C. 3937.18(L). Thus, the same analysis that we applied when we discussed the effect of the "parking" exception also applies to the "exclusive use" exception. By failing to list the specific autos covered in the policy, the ACI Healthcare policy is not one which "serves as proof of financial responsibility *** for owners or operators of the motor vehicles specifically identified in the policy of insurance." R.C. 3937.18(L)(1). Therefore, the policy does not qualify as an "automobile liability or motor vehicle liability policy" pursuant to R.C. 3937.18(L). As such, ACI was not required to provide UIM coverage to Appellant, and we find that Appellant's second assignment of error lacks merit.

Assignment of Error Number Three

"THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT IS NOT COVERED UNDER THE EXCESS LIABILITY POLICY, NO. 00L079, ISSUED TO HER EMPLOYER BY ACI."

In Appellant's third assignment of error, she has argued that the trial court erred when it concluded that she was precluded from UIM coverage under the ACI Healthcare System Excess Liability Insurance policy. Particularly, [*26] Appellant has contended that the trial court erred by finding that the ACI Healthcare System Excess Liability Insurance policy was the only underlying policy and that coverage did not apply because she was not acting within the scope of employment at the time of her accident.

The Healthcare System Excess Liability Insurance policy ("ACI Excess policy") provides that "the Company will pay on behalf of any INSURED that amount of ULTIMATE NET LOSS in excess of the UNDERLYING AMOUNTS stated in the Schedule of UNDERLYING AMOUNTS which the INSURED becomes legally obligated to pay[.]" By these terms of coverage, it is clear that the ACI Excess policy is not a primary insurance policy, but is HN21 what is referred to as an "excess insurance policy." Such a policy provides vertical coverage above the limits of the insured's primary policy. *American Special Risk Ins. Co. v. A-Best Products, Inc.* (N.D.Ohio 1997), 975 F. Supp. 1019, 1022, affirmed, (C.A.6, 1998), 166 F.3d 1213. That is, an excess policy provides secondary coverage or "coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. [*27] " *American Special Risk*, 975 F. Supp. at 1022, quoting *Continental Marble & Granite v. Canal Ins. Co.* (C.A.5, 1986), 785 F.2d 1258.

Liability coverage under the ACI Excess policy is limited. The policy provides that:

"This POLICY will apply only to CLAIMS: (i) that are covered by an insurance policy listed in the Schedule of UNDERLYING AMOUNTS or by a self-insured retention listed in the Schedule of UNDERLYING AMOUNTS, or that would have been so covered but for the exhaustion of the UNDERLYING AMOUNTS by payment; and (ii) that are not otherwise excluded by this Policy."

"Insured" is defined as the named insured, any insured entity, any insured person, and any additional insured. "Underlying amounts" is defined as "the total amounts as stated in the Schedule of UNDERLYING AMOUNTS in excess of which this Policy is written." Thus, in order to recover under the ACI Excess policy, Appellant must be an insured party that must have first recovered under a policy listed in the "Schedule of UNDERLYING AMOUNTS."

As discussed below, we find that Appellant is not an "insured" for purposes of coverage under the ACI Excess policy. Further, we find that **[*28]** even assuming Appellant was an "insured" under the ACI Excess policy, she would still be precluded from coverage because she was unable to recover under any policy listed in the "Schedule of Underlying Amounts."

Appellant is not an "insured" under the ACI Excess policy

As previously noted, "insured" includes "any INSURED PERSON." "Insured person" includes "any employee of an INSURED ENTITY other than an intern, resident, fellow, or physician; but only while acting within the scope of that person's duties as such." An "insured entity" includes "the NAMED INSURED," which is further defined as "the entity designated in Item 1 of the Declarations." CFGH is the entity listed in the declarations, and, thus, it is both the "named insured" and the "named entity."

According to the policy's definition of "insured person," in order for Appellant to be deemed an "insured," she must be an employee of CFGH and she must have been acting within the scope of her employment with CFGH when the accident occurred. It is undisputed that Appellant was an employee of CFGH when she was involved in the automobile accident. However, it is also undisputed that when the accident occurred she was not acting **[*29]** within the scope of her employment with CFGH, nor was she driving an automobile owned or leased by CFGH. Thus, Appellant cannot be deemed to be an "insured" for purposes of UM/UIM coverage under the ACI Excess policy.

By holding that Appellant was not an "insured" because she was not acting within the scope of employment when the accident occurred, we reject Appellant's argument that the "scope of employment" requirement does not apply to UIM coverage. Furthermore, we find that Appellant's reliance on *Demetry v. Kim* (1991), 72 Ohio App.3d 692, 595 N.E.2d 997 is misplaced.

Appellant has argued, citing to *Demetry*, that "just as liability exclusions and restrictions cannot be imposed on UIM coverage arising by operation of law, liability exclusions cannot be imputed to the UIM coverage accepted by CFGH in the Excess Policy herein." In *Demetry*, the appellate court held that exclusions contained in the excess insurance policy did not apply to UIM coverage implied by law. The court stated that "the parties never intended underinsured coverage to be provided by the policy. As such, there could be no negotiated exclusions intended to be implied to the underinsured **[*30]** coverage. The standard of clear unambiguous language has not been complied with." *Demetry*, 72 Ohio App.3d at 698.

The excess insurance policy at issue in the present case is different than the policy at issue in

*Demetry*. UM/UIM coverage was offered and accepted in the ACI Excess policy; such coverage did not arise by operation of law. n6 The insurer, by offering UM/UIM coverage, intended to have the terms of the policy apply to UM/UIM coverage. Because UM/UIM was both offered and accepted under the ACI Excess policy, we believe that the exclusions contained in the policy properly apply both to excess liability and to UM/UIM coverage. We base this conclusion upon the court's analysis in *Scott-Pontzer*.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The president and CEO of CFGH, Fred Anthony, signed a clause contained in the ACI Excess policy entitled "AMERICAN CONTINENTAL INSURANCE COMPANY OHIO UNDERINSURED/UNINSURED MOTORISTS EXCESS COVERAGE OPTIONS," whereby CFGH agreed to "accept underinsured and uninsured motorist excess liability coverage. The desired limits of liability for this coverage are $ 1,000,000."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*31]**

*HN22* In *Scott-Pontzer*, the insurer failed to offer UM coverage and the umbrella/excess policy did not contain an UM coverage form that defined insureds for purposes of UM coverage. The court found that because there was no showing that UM coverage was offered and rejected, UM coverage arose by operation of law under the policy because even excess liability insurance policies must comply with R.C. 3937.18. *Scott-Pontzer*, 85 Ohio St.3d at 665. The court also concluded that the restriction, which only allowed coverage to those employees acting within the scope of their employment, did not apply to UM coverage. The Ohio Supreme Court held that "any language in the [umbrella/excess policy] restricting coverage was intended to apply solely to excess *liability* coverage and not for purposes of underinsured motorist coverage." (Emphasis sic.) Id. at 666. By holding that the insurer's failure to provide UM coverage to the insured prohibited the application of the "scope of employment" requirement to UM coverage, the court in *Scott-Pontzer* intimated that if the insurer had offered, and the insured accepted, both UM and UIM coverage **[*32]** under the umbrella/excess policy then the "scope of employment" requirement would have applied to excess liability coverage *and* UM coverage.

*HN23* *Scott-Pontzer* and *Demetry* were both cases in which the insurer failed to offer UM/UIM coverage under an umbrella/excess liability policy. UM/UIM coverage arose by operation of law, and as a result, both courts concluded that the restrictions or exclusions contained in each policy did not apply to UM/UIM coverage. As this case involves an excess policy that included UM/UIM coverage by contract, we can safely conclude that the "scope of employment" requirement applies to both excess liability and UIM coverage.

We also note that a *Scott-Pontzer* analysis is inapplicable to the ACI Excess policy. In *Scott-Pontzer*, the court was forced to conclude that the term "you" applied to both the corporation and its employees because the term was unclear and ambiguous. *Scott-Pontzer*, 85 Ohio St.3d at 665. *HN24* It held that "policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured." *Scott-Pontzer*, 85 Ohio St.3d at 665. **[*33]**

Unlike the language used in the *Scott-Pontzer* umbrella/excess policy, however, the language used in the ACI Excess policy is clear and unambiguous. The policy clearly defines the term "insured," thus providing a detailed description of those parties covered under the contract. Therefore, this Court need not attempt to insert a definition of "insured" that includes a corporation and its employees.

Appellant was not covered under the primary policies

Assuming, arguendo, that Appellant is an "insured" for purposes of coverage under the ACI Excess policy, she is still precluded from UIM coverage because she was not covered under the underlying or primary policies.

As discussed above, coverage under the ACI Excess policy is dependent upon proving not only that Appellant is an "insured," but that she was able to recover under any of the underlying policies listed in the "Schedule of Underlying Amounts." The policies listed in the "Schedule of Underlying Amounts" are a policy from Republic Western, a policy from Kemper Insurance (Policy Number F34034456-00) n7, and the ACI Healthcare System Liability policy (Policy Number 00K079). n8 Appellant, therefore, should have been covered **[\*34]** under both the ACI Healthcare policy and AMMIC policy before attempting to seek coverage under the ACI Excess policy.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Although listed as a Kemper Insurance policy, policy number F34034456-00 is in actuality the AMMIC policy.

n8 The trial court mistakenly concluded that the only underlying policy was the ACI Healthcare policy, when in fact the AMMIC policy is also listed as an underlying policy.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As previously discussed in Appellant's first and second assignments of error, Appellant was precluded from coverage under both the AMMIC policy and the ACI Healthcare policy, Policy Number 00K079. As Appellant was precluded from coverage under both of these policies for which the ACI Excess policy was written, she cannot recover under the ACI Excess policy.

In sum, we hold that because Appellant was deemed not to be an "insured" for purposes of UIM coverage under the ACI Excess policy, and because she did not receive coverage under the underlying policies for which the ACI Excess policy was written, Appellant **[\*35]** is not entitled to UIM coverage under the ACI Excess policy. Consequently, Appellant's third assignment of error is without merit.

Assignment of Error Number Four

"THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT IS NOT COVERED UNDER THE HIGH LIMIT POLICY, NO. 00V079, ISSUED TO HER EMPLOYER BY ACI."

In Appellant's fourth assignment of error, she has argued that the trial court erred when it concluded that she was not entitled to coverage under the Healthcare System High Limit Policy. Specifically, she has contended that, pursuant to *Scott-Pontzer,* Appellant is an insured for purposes of UIM coverage and, therefore, is entitled to benefits under the Healthcare System High Limit Policy. We disagree.

The Healthcare System High Limit Policy ("ACI High Limit policy") provides coverage "on behalf of any INSURED that amount of ULTIMATE NET LOSS in excess of the APPLICABLE UNDERLYING AMOUNTS stated in the Schedule of APPLICABLE UNDERLYING AMOUNTS that the INSURED becomes legally obligated to pay[.]"

An "insured" includes the named insured or "any person or entity insured by the IMMEDIATE UNDERLYING POLICY." "Ultimate net loss" is defined as "(A) All DAMAGES which **[*36]** the INSURED is legally obligated to pay as a result of a CLAIM covered by this Policy; and, (B) All CLAIM EXPENSES incurred in connection with a CLAIM covered by this Policy." The "applicable underlying amounts" is defined as "the total amounts as stated in the Schedule of APPLICABLE UNDERLYING AMOUNTS in excess of which this Policy is written." The "immediate underlying policy" is defined as the "policy designated in Item 5 of the Declarations." n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 The "immediate underlying policy" is actually listed in Item 4 of the declarations.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The ACI High Limit policy also contains an exclusion whereby the policy "does not apply to, and the Company will not pay any ULTIMATE NET LOSS including DAMAGES or CLAIM EXPENSES for, any CLAIM: (1) Based upon, arising out of, or in any way involving any CLAIM that is not covered by the IMMEDIATE UNDERLYING POLICY."

Another limiting provision contained in the ACI High Limit policy provides that "the Company will not be liable to pay any ULTIMATE NET LOSS for any CLAIM covered by **[*37]** this Policy until all APPLICABLE UNDERLYING AMOUNTS applicable to that CLAIM have been exhausted by payment."

**HN25**⊕According to the terms of general coverage contained in the ACI High Limit policy, and the exclusionary provisions, a party is entitled to coverage under the ACI High Limit policy if the party (1) is an insured entitled to coverage under the immediate underlying policy; and (2) has exhausted payments under the applicable amounts listed in the declarations.

We find that Appellant is not an "insured" who is entitled to coverage under the "immediate underlying policy." The "immediate underlying policy" is listed as Policy Number 00L079, or the ACI Excess policy. We concluded in our discussion of assignment of error number three that Appellant was not entitled to coverage under the ACI Excess policy because she was precluded from coverage under both the ACI Healthcare policy and the AMMIC policy. As Appellant was not entitled to coverage under the underlying policy (the ACI Excess policy), she is necessarily precluded from coverage under the ACI High Limit policy.

In addition, we find that Appellant was unable to fulfill the "exhaustion" requirement. In order to trigger coverage **[*38]** under the ACI High Limit policy, Appellant was required to first recover under the "applicable underlying amounts," which includes the ACI Excess policy and the AMMIC policy. Because she was precluded from recovery under those policies, as discussed in assignments of error one and two, she necessarily could not exhaust the applicable amounts. Consequently, Appellant's fourth assignment of error is without merit.

AMMIC'S Cross-assignment of Error Number One

"THE TRIAL COURT FAILED TO ADDRESS WHETHER AMERICAN MANUFACTURERS

MUTUAL INSURANCE COMPANY IS ENTITLED TO A SET-OFF OF ALL AMOUNTS
AVAILABLE FOR PAYMENT BY THE TORTFEASOR IF UM/UIM COVERAGE WAS
AVAILABLE TO APPELLANT."

AMMIC'S Cross-assignment of Error Number Two

"THE TRIAL COURT FAILED TO ADDRESS WHETHER AMERICAN MANUFACTURERS
MUTUAL INSURANCE COMPANY'S POLICY PROVIDES EXCESS COVERAGE OR,
ALTERNATIVELY PROVIDES COVERAGE, ON A PRO RATA BASIS, IN THE EVENT
THAT UM/UIM COVERAGE IS DEEMED TO APPLY."

AMMIC'S Cross-assignment of Error Number Three

"THE TRIAL COURT FAILED TO ADDRESS WHETHER THE IMPUTATION OF UM/UIM
COVERAGE INTO THE AMERICAN MANUFACTURERS MUTUAL INSURANCE
COMPANY'S POLICY VIOLATES BOTH **[*39]** THE OHIO AND THE UNITED STATES
CONSTITUTIONS."

We decline to address AMMIC's cross-assignments of error because *HN26*cross-assignments
of error by an appellee who has not filed a notice of appeal may be considered only when
necessary to prevent reversal. *Duracote Corp. v. Goodyear Tire & Rubber Co. (1983), 2 Ohio
St.3d 160, 163-64, 2 Ohio B. 704, 443 N.E.2d 184.* Where the court of appeals determines
that the trial court committed no error prejudicial to the appellant in the errors assigned and
argued, App.R. 12(B) requires the appellate court to refrain from consideration of any error
assigned and argued in the brief of appellee on cross-appeal. *Pang v. Minch (1990), 53 Ohio
St.3d 186, 559 N.E.2d 1313,* paragraph eight of the syllabus.

III

Appellant's assignments of error are overruled. We declined to address AMMIC's cross-
assignments of error. The judgment of the trial court is affirmed.

Judgement affirmed.


BETH WHITMORE, Judge.

FOR THE COURT

SLABY, P. J.

BATCHELDER, J.

CONCUR

Service: **Get by LEXSEE®**
Citation: **2003 ohio 360**
View: Full
Date/Time: Monday, November 3, 2003 - 9:15 AM EST

* Signal Legend:
● - Warning: Negative treatment is indicated

Service: **Get by LEXSEE®**
Citation: **2003 Ohio LEXIS 1836**

*99 Ohio St. 3d 1461; 2003 Ohio 3717;*
*791 N.E.2d 978; 2003 Ohio LEXIS 1836, **

Mazza v. Am. Continental Ins. Co.

2003-0510.

SUPREME COURT OF OHIO

99 Ohio St. 3d 1461; 2003 Ohio 3717; 791 N.E.2d 978; 2003 Ohio LEXIS 1836

July 15, 2003, Decided

**NOTICE:   [*1]**   DECISION WITHOUT PUBLISHED OPINION

**PRIOR HISTORY:  Summit App. No. 21192, 2003 Ohio 360. Mazza v. Am. Cont'l Ins. Co., 2003 Ohio 360, 2003 Ohio App. LEXIS 381** (Ohio Ct. App., Summit County, Jan. 29, 2003)

**JUDGES:** Resnick, Pfeifer and Lundberg Stratton, JJ., dissent.

**OPINION:**

APPEALS ACCEPTED FOR REVIEW

Discretionary appeal allowed on Propositions of Law I and II only. Proposition of Law I is held for the decision in 2002-0610, *Geren v. Westfield Ins. Co.*, Lucas App. No. L-01-1398, 2002 Ohio 1230; Proposition of Law II is held for the decision in 2002-0579, *Burkhart v. CNA Ins. Co.*, Stark App. No. 2001CA00265, 2002 Ohio 903; briefing schedule stayed.

Resnick, Pfeifer and Lundberg Stratton, JJ., dissent.

Discretionary cross-appeal denied.

Service: **Get by LEXSEE®**
Citation: **2003 Ohio LEXIS 1836**
View: Full
Date/Time: Friday, October 31, 2003 - 4:11 PM EST

* Signal Legend:
● -   Warning: Negative treatment is indicated
⚠ -   Caution: Possible negative treatment
◆ -   Positive treatment is indicated
ⓐ -   Citing Refs. With Analysis Available
ⓘ -   Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

04/29/03 12:46:56    CWS_PH_CH3->    ORTSS  RightFax    Page 014

04/24/2003 09:50 FAX 859 594 3070    C H I KY.    ☑010

## OHIO TRAFFIC CRASH REPORT    OH-1 (Rev. 1-82)

**LOCAL REPORT NO.** C98001200    REPORTING AGENCY: SPRINGFIELD TWP    N.C.I.C. OH031400    ODHE USE ONLY - DO NOT MARK ABOVE    **LOCAL FILE NO.**

REPORT TAKEN: ☑ AT STATION    NO. OF VEH PEDESTRIANS INVOLVED: 2    CRASH SEVERITY (CHECK MOST SEVERE): ☐ FATAL ☐ INJURY ☑ PROPERTY DAMAGE ONLY    COMBINED YEAR/PROP LOSS    ☑ OVER $150    HIT SKIP    ☑ SOLVED ☐ UNSOLVED    ☐ UNDER $150

**V. COUNTY OF** HAMILTON    IN ☐ CITY ☐ VILLAGE ☑ TWP OF SPRINGFIELD    DATE OF CRASH: 01 17 98    DAY: SAT    TIME: MILITARY 14.0

CRASH OCCURRED ON WINTON    WITHIN THE INTERSECTION OF WEST BOUND RAMP TO RONALD REAGAN

IF NOT IN INTERSECTION    MILES / FEET  W  E  OF    (LIST NEAREST INTERSECTING STREET, MILEPOST, HOUSE NO.)

---

**UNIT NO.** 1    NO. OF OCCUPANTS 1    OPERATING ☑    PARKED ☐    DRIVERLESS ☐    HIT & RUN ☐    NON-CONTACT ☐    INSURANCE CO. OR AGENT: NOT KNOWN

DRIVER/PEDESTRIAN NAME (LAST, FIRST, MI): LAMAR LUCIOUS    ADDRESS (NO. STREET, CITY, STATE, ZIP CODE): 1584 St Clair - Mt Healthy - Ohio 45231

PHONE 825-0071    BIRTH DATE 03.01.35    AGE 76    SEX M    SOCIAL SECURITY NO. 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    STATE    DRIVER'S LICENSE NO. NONE    OCCUPATION LABOR

OWNER (IF SAME AS DRIVER, WRITE SAME): SAME    ADDRESS: SAME    PHONE: SAME

VEH YR 76    MAKE FORD    MODEL F100    COLOR YELLOW    STYLE    STATE OH    LICENSE PLATE NO. N901124    TOWING SERVICE BLISS    VERIFIED DIR S FROM N

DAMAGE SEVERITY: ☑ NON-FUNCTIONAL ☐ FUNCTIONAL ☐ DISABLING    DAMAGE SCALE: TOP 9 UNDERCAR 10 LOAD 11 TRUNK 12    ☐ NONE ☑ MODERATE ☐ LIGHT ☐ HEAVY    VEHICLE DISPOSITION: ☑ DRIVEN AWAY ☐ REMAINED AT SCENE ☐ TOWED    FIRE: ☑ NO FIRE ☐ FIRE DUE TO CRASH ☐ OTHER FIRE

---

**UNIT NO.** 2    NO. OF OCCUPANTS 1    OPERATING ☑    PARKED ☐    DRIVERLESS ☐    HIT & RUN ☐    NON-CONTACT ☐    INSURANCE CO. OR AGENT: INDEMNITY INSUR NO?

DRIVER/PEDESTRIAN NAME (LAST, FIRST, MI): ELSASS ANTHONY L    ADDRESS (NO. STREET, CITY, STATE, ZIP CODE): 440 LAKERIDGE - CINTI - OHIO 45231

PHONE 772-7094    BIRTH DATE 08.04.39    AGE 58    SEX M    SOCIAL SECURITY NO. 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    STATE OH    DRIVER'S LICENSE NO. RK 571399    OCCUPATION MARKETING

OWNER (IF SAME AS DRIVER, WRITE SAME): SAME    ADDRESS: SAME    PHONE: SAME

VEH YR 94    MAKE BUICK    MODEL LESABRE    COLOR BRN    STYLE 4 DR    STATE OH    LICENSE PLATE NO. AUK 7256    TOWING SERVICE CLASSIC    VERIFIED DIR N FROM S

DAMAGE SEVERITY: ☐ NON-FUNCTIONAL ☑ FUNCTIONAL ☐ DISABLING    DAMAGE SCALE: TOP 9 UNDERCAR 10 LOAD 11 TRAILER    ☐ NONE ☐ MODERATE ☐ LIGHT ☑ HEAVY    VEHICLE DISPOSITION: ☐ DRIVEN AWAY ☐ REMAINED AT SCENE ☑ TOWED    FIRE: ☑ NO FIRE ☐ FIRE DUE TO CRASH ☐ OTHER FIRE

---

## OCCUPANT SECTION

FROM UNIT NO. WIT    NAME (LAST, FIRST, MI): MACK LISA    ADDRESS: 5 DEWITT CT    BIRTHDATE    AGE    PHONE 742-8773    SEX F

FROM UNIT NO.    NAME (LAST, FIRST, MI):    ADDRESS:    BIRTHDATE    AGE    PHONE    SEX

FROM UNIT NO.    NAME (LAST, FIRST, MI):    ADDRESS:    BIRTHDATE    AGE    PHONE    SEX

**POSITION**

**INJURIES**
1 FATAL
2 SERIOUS VISIBLE
3 MINOR VISIBLE
4 NO VISIBLE INJURY
5 NOT INJURED

**CONDITION**
1 APPARENTLY NORMAL
2 SICK
3 FATIGUED
4 APPARENTLY ASLEEP
5 PHYSICAL DEFECT
6 OTHER CONDITION
0 UNKNOWN

P-PEDESTRIAN

---

## POLICE ACTION

INJURED TAKEN TO BETHESDA NORTH    BY MEDIC 79

INJURED TAKEN TO    BY

**RESTRAINTS**
1 NOT USED
2 NONE AVAILABLE
3 LAP BELT USED
4 LAP/SHOULDER BELT USED
5 SHOULDER BELT USED
6 CHILD SAFETY SEAT
7 AIR BAG USED
8 USE NOT REPORTED

**ALCOHOL**    TESTED: ☑ YES ☐ NO    TESTED ☐ YES ☑ NO
1 NO ALCOHOL DETECTED
2 HBD ABILITY IMPAIRED
3 HBD ABILITY NOT IMPAIRED
4 HBD ABILITY UNKNOWN

OFFENSE CHARGED AND DESCRIPTION: 4511.21(A) TURN LEFT TURN 4511.19(A1)    D.R.C. ☐    O.R.C. ☐    4549.021 LEAVING THE SCENE    DUI

OFFENSE CHARGED AND DESCRIPTION: 4511.192 - SEPARATELY    D.R.C. ☐    O.R.C. ☐    4511 A.S.    CU5510?

**EJECTION**
1 NOT EJECTED
2 PARTIAL
3 TOTAL
4 TRAPPED INSIDE VEHICLE

**DRUGS**    TESTED: ☐ YES ☑ NO    TESTED ☐ YES ☑ NO
1 NO DRUGS DETECTED
2 USING PRESCRIBED DRUG
3 USING ILLICIT DRUG

RECEIVED CALL: 1712    DISPATCHED: 1712    ARRIVED: 1715    CLEARED: 204.2    OTHER TIME    TOTAL MINUTES: 55 MIN

DATE REPORT FILED: 01 17 98    PHOTOS: ☐ YES ☑ NO    OFFICER'S NAME: J ROOT    BADGE NO. 122    CHECKED BY: 144

NEW 7001

5134210212    LINDHORST DREIDMXH    APR-23-2003 12:02    20:02    P.09/10



**EXHIBIT**
F

04/24/2003 09:51 FAX 859 594 3070   C H I KY.   ☑011



UNIT #2 SOUTHBOUND ON WINTON RD. UNIT #1 NORTHBOUND ON WINTON RD ATTEMPTED TO MAKE LEFT TURN ON TO RONALD REAGAN HIGHWAY AND PULLED IN FRONT OF UNIT #2. UNIT #2'S RIGHT FRONT STRUCK UNIT #1'S RIGHT REAR. UNIT #1 THEN FLED THE SCENE AND WAS LOCATED ON HAMILTON AVE NEAR MEREDITH DR.